James H. RUTTER and Marie R. Rutter, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 87–4599.

United States Court of Appeals, Fifth Circuit.

Sept. 7, 1988.

Edward B. Benjamin, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert W. Nuzum, Deutsch, Kerrigan & Stiles, New Orleans, La., for petitioners-appellants.

Michael L. Paup, Chief, Appellate Section, Michael C. Durney, Acting Atty. Gen., Williams S. Rose, Ann Belanger Durney, Reviewer, William A. Whitledge, Atty., Gary R. Allen, Acting Chief, Washington, D.C., for respondent-appellee.

Before THORNBERRY, WILLIAMS and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants challenge the Tax Court's holding that amounts paid as compensation in 1976, 1977, 1978, and 1979 by the J.H. Rutter Rex Manufacturing Company, Inc. to James H. Rutter in part exceeded reasonable compensation for services actually rendered during those taxable years. The Tax Court held that the excessive amounts of compensation constituted payments of dividends and therefore were subject to a higher tax rate. The Tax Court assessed against appellants, James Rutter and his wife Marie, deficiencies of $28,640.28 for taxable year 1977 and $12,302.13 for taxable year 1979. The 1977 and 1979 deficiencies against James and Marie Rutter are the only deficiency orders before us in this case. We affirm.

I.

James H. Rutter was born in 1904 and has been in the clothing manufacturing business his entire adult life. In 1930, Rutter and two other individuals formed the Rex Shirt Company. Rutter was the most active of the three owners of the company and was responsible for managing and overseeing all aspects of the business. Under his management, the company's sales volume increased from $37,968 in 1931 to $1,525,161 in 1941. In 1941, Rutter bought out the other two owners of the company, and changed the name of the company to the J.H. Rutter Rex Manufacturing Company, Inc. ("Rutter Rex"). Since 1941 James Rutter has owned 99.908% of the stock in Rutter Rex, and his wife Marie has owned the remaining 0.092%. Rutter Rex is a Louisiana corporation that currently manufactures various types of work pants and shirts, jeans, and casual pants and shirts. The company primarily manufactures clothing items for such retailers as Sears, J.C. Penney, and Montgomery Ward, and for the U.S. military. The company does not have any retail facilities of its own.

Beginning in the early 1950's, the company was run by James Rutter, his son, Eugene, and his son-in-law, A.H. Denis. These three individuals managed and supervised all aspects of a business whose sales volume increased to over $20 million by 1976. In 1960, Eugene Rutter became chief operating officer of the company and Denis became vice president. James Rutter has always been chairman of the board of directors and the company's chief executive officer. Denis left the company in 1969, and his duties were taken over by the

two Rutters. During the years at issue, 1976–1979, James and Eugene Rutter made the final decisions with respect to all aspects of Rutter Rex's business. James was in Rutter Rex's offices on a regular basis. When he was not at the office, he was visiting one of the company's factories or travelling to call on customers. He took no vacations during this period.

Rutter Rex deducted the following amounts as compensation paid and accrued to James Rutter during the years 1976–1979:[1]

|      | Salary | Bonus | Total Compensation |
|------|--------|-------|--------------------|
| 1976 | $200,000 | $225,000 | $425,000 |
| 1977 | 200,000 | 337,500 | 537,500 |
| 1978 | 200,000 | 337,500 | 537,500 |
| 1979 | 200,000 | 318,125 | 518,125 |

These compensation amounts were determined by James Rutter, who set or had final approval as to the compensation of all Rutter Rex employees. Rutter Rex did not provide either pension or profit-sharing benefits to any of its employees or officers, including James and Eugene. Nor did the company provide any stock option benefits to any of its employees or officers.

Beginning in March 1979, the IRS audited Rutter Rex's 1976–1979 federal income tax returns and determined that the company had paid compensation to James and Eugene Rutter that exceeded reasonable compensation for the services rendered during those years. The IRS adjusted Rutter Rex's 1976–1979 federal income tax returns accordingly by disallowing the deductions under 26 I.R.C. § 162(a)(1) for these excessive amounts of compensation.[2] The IRS also determined that Rutter Rex had retained earnings and profits over and above the reasonable needs of its business in 1977 and 1978 and therefore was subject to the tax on accumulated earnings.[3]

The IRS also audited and adjusted appellants'[4] federal income tax returns and determined that the excessive amounts paid to James Rutter as compensation during these years were dividend payments subject to a maximum tax rate of 70% rather than earned income subject to a maximum 50% tax rate.[5] The Commissioner issued a notice of deficiency on March 25, 1981.

Appellants disputed the Commissioner's adjustments and filed a petition with the United States Tax Court on June 26, 1981. Rutter Rex disputed its adjustments and filed a petition on March 17, 1982. The two cases were consolidated for trial by the Tax Court on December 15, 1982, upon appellants' and Rutter Rex's motion. At trial, appellants presented the reports and testimony of two expert witnesses, Ted S. Decker and Donald R. Simpson. Both these experts asserted that the entire amounts of compensation paid to James and Eugene

|      | Salary | Bonus | Total Compensation |
|------|--------|-------|--------------------|
| 1976 | $125,000 | $175,000 | $300,000 |
| 1977 | 125,000 | 262,500 | 387,500 |
| 1978 | 125,000 | 262,500 | 387,500 |
| 1979 | 125,000 | 270,625 | 395,625 |

1. Rutter Rex's tax returns were prepared on an accrual method based on a regular calendar year. James and Marie Rutter's returns were prepared on a cash receipts and disbursements method. As a result, the amount of compensation Rutter Rex paid and accrued to James Rutter during each of these years does not necessarily correspond to the amount reported by James Rutter as personal income during that year. Our focus is on the amounts Rutter Rex paid and accrued.

2. Eugene Rutter is not a party to this appeal. Since Eugene Rutter was not a shareholder in Rutter Rex, the IRS and the Tax Court did not recharacterize his excessive compensation as payment of dividends. As a result, Eugene Rutter did not have to pay any additional tax. *See* Treas.Reg. 1.162–8 (1958). Rutter Rex, however, was not allowed to deduct as business expenses the amounts of compensation paid to Eugene that were deemed excessive. Eugene's total compensation for these years was:

3. A challenge by Rutter Rex as to this conclusion is dealt with in the companion case, *J.H. Rutter Rex Manufacturing Co., Inc. v. Commissioner of Internal Revenue,* 853 F.2d 1275 (5th Cir.1988).

4. James' wife Marie is a named party in this case by virtue of the fact that she filed a joint tax return with James during the years at issue.

5. Prior to the enactment of the Economic Recovery Act of 1981, *earned* income was subject to a maximum tax rate of 50% while other ordinary income was subject to a maximum tax rate of 70%. This distinction, of course, has since been eliminated and all ordinary income is now taxed at the same rate.

Rutter during 1976–1979 were reasonable. The Tax Court did not give Decker's testimony much weight, since Decker analyzed James and Eugene Rutter's compensation as a percentage of sales although he also testified that there was no direct relationship in the clothing manufacturing industry between sales and compensation.

Utilizing the "Hay System" to develop his compensation analysis, witness Simpson determined the maximum comparable salaries for comparable positions in comparable companies. Simpson then increased these figures by over 200% for bonuses and "long-term incentives" to conclude that the compensation amounts paid to James and Eugene were reasonable. The Commissioner also presented two expert witnesses on reasonable compensation, Ernest Gruenfeld and Emmet James Brennan, III. Not surprisingly, they testified that James and Eugene had been excessively compensated.

After trial, the Tax Court found that part of the compensation paid to James and Eugene Rutter during 1976–1979 exceeded reasonable compensation for the services actually rendered during those years. The court determined the following amounts constituted reasonable compensation to James and Eugene under 26 I.R.C. § 162(a)(1):

|  | James | Eugene |
| --- | --- | --- |
| 1976 | $286,375 | $220,625 |
| 1977 | 312,000 | 229,750 |
| 1978 | 375,125 | 270,125 |
| 1979 | 431,500 | 306,375 |

These figures were based primarily on the upper limit of reasonable compensation testified to by Mr. Simpson, one of appellants' experts, plus a 25% addition to compensate for Rutter Rex's lack of a pension or profit-sharing plan. The court held that the excessive compensation amounts paid to James Rutter constituted payments of dividends and were thus subject to the higher maximum tax rate of 70%. The court assessed deficiencies in federal income taxes against appellants in the amount of $28,640.28 for 1977 and $12,302.13 for 1979.[6]

The court also disallowed Rutter Rex's deductions under 26 I.R.C. § 162(a)(1) for compensation paid to James and Eugene to the extent these amounts exceeded the court's reasonable compensation determinations. In a further holding, the court found Rutter Rex liable for the accumulated earnings tax for 1977 and 1978. James and Marie Rutter and Rutter Rex appeal. The determinative issue before us is the reasonable compensation issue.

## II.

26 I.R.C. § 162(a)(1) permits a corporation to deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered." Treas.Reg. 1.162–7(a) states:

There may be included among the ordinary and necessary expenses paid or incurred in carrying on any trade or business a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services.

In order for compensation payments to be deductible under § 162(a)(1), the payments therefore must, first, be for "services actually rendered" and, second, be "reasonable." There is no doubt that James and Eugene Rutter rendered extensive services to Rutter Rex during the years at issue. The focus, therefore, must be upon the reasonableness factor.

The inquiry into the reasonableness of compensation is especially critical in the case of a closely held corporation having few shareholders, practically all of whom draw a salary. In such a closely held corporation, like Rutter Rex, it obviously is in the tax interest of all parties to characterize the amounts distributed to shareholder/officers as compensation rather than as dividends. Corporations can deduct salaries and bonuses under § 162(a)(1)

---

**6.** The court apparently did not assess deficiencies against James and Marie Rutter for tax years 1976 and 1978 for reasons not readily apparent from the record. We nevertheless consider all four years because of the impact the reasonable compensation determinations have on Rutter Rex's income tax liability.

but obviously not dividend payments because they are profits, not business expenses. The concern is to prevent the distribution of corporate profits through the payment of unreasonably large salaries and bonuses to controlling shareholder/officers. Distribution of profits through compensation payments to shareholder/officers avoids the double tax on corporate profits which are distributed to shareholders as dividends. In addition as mentioned earlier, during the years at issue in this case individuals were taxed at a maximum rate of 50% for earned income but at a maximum rate of 70% for dividend income. The higher tax rate was a further incentive to characterize corporate distributions to shareholder/officers as compensation rather than as dividends. *See Owensby & Kritikos, Inc. v. Commissioner,* 819 F.2d 1315, 1322–23 (5th Cir.1987).

■ The reasonableness of compensation paid by a corporation is a question of fact. *Owensby & Kritikos,* 819 F.2d at 1323; *B.B. Rider Corp. v. Commissioner,* 725 F.2d 945, 952 (3rd Cir.1984); *Kennedy v. Commissioner,* 671 F.2d 167, 173 (6th Cir.1982). Each case turns on its own facts and circumstances. *Owensby & Kritikos,* 819 F.2d at 1323; *Charles Schneider & Co. v. Commissioner,* 500 F.2d 148, 151 (8th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). In addressing the issue of reasonable compensation, the court, however, must consider a number of factors. These factors include:

(1) the employee's qualifications;

(2) the nature, extent and scope of the employee's work;

(3) the size and complexities of the business;

(4) a comparison of salaries paid with gross income and net income;

(5) the prevailing general economic conditions;

(6) comparison of salaries with distributions to stockholders;

(7) the prevailing rates of compensation for comparable positions in comparable concerns;

(8) the salary policy of the taxpayer [corporation] as to all employees; and

(9) in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years.

*Owensby & Kritikos,* 819 F.2d at 1323, citing *Mayson Manufacturing Co. v. Commissioner,* 178 F.2d 115, 119 (6th Cir. 1949).[7] No single factor is determinative. The trial court needs to consider and weigh the totality of the facts and circumstances when determining reasonable compensation. *Owensby & Kritikos,* 819 F.2d at 1323.

Appellants urge that the Tax Court erred as a matter of law by not applying specifically each of the nine *Mayson* factors enunciated by this Court in *Owensby & Kritikos* in deciding that the compensation paid by Rutter Rex to James and Eugene Rutter was in part unreasonable. They claim the court relied solely on the reports and testimony of expert witnesses regarding the seventh *Mayson* factor (the prevailing rates of compensation for comparable positions in comparable concerns) and did not consider or weigh any of the other eight factors in reaching its decision. They urge that if the court had followed the nine factor analysis the entire compensation amounts paid to James and Eugene during these years would have been found reasonable.

■ We agree with appellants that the application of the appropriate factors in the determination of reasonable compensation

7. *Cf. Elliotts, Inc. v. Commissioner,* 716 F.2d 1241, 1245–48 (9th Cir.1983) (where the Ninth Circuit essentially divided these factors into five broader categories for consideration); *B.B. Rider Corp.,* 725 F.2d at 952–4 (where the Third Circuit analyzed compensation under four broader categories); and *Kennedy,* 671 F.2d at 173–4 (where the Sixth Circuit noted that courts had taken into account other factors in addition to the factors the Court had enumerated in *Mayson,* including: the success of the employee's efforts; profitability of the business; absence of the usual fringe benefits such as a pension or profit sharing plan, stock options, etc. which are available to executives of other companies of comparable size; unusual capability of employees; and bonuses not paid in the same ratio as stock holdings.)

is reviewable de novo as a question of law. *Owensby & Kritikos*, 819 F.2d at 1323; *Elliotts, Inc.*, 716 F.2d at 1245. We conclude, however, that the Tax Court did not err as a matter of law. Instead, as its opinion shows, the court properly took into account all the appropriate factors in its reasonable compensation determinations. The court was well aware of the *Mayson* factors and made findings of fact as to each of them, some of which were quite extensive. We find no error in the court considering some of the factors without an extensive detailed written analysis. Since the court adequately considered the various factors as a matter of law, its finding that the compensation paid to James and Eugene Rutter was in part unreasonable is reviewable as an issue of fact under the clearly erroneous standard. *Owensby & Kritikos*, 819 F.2d at 1323.

### III.

■ "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). After a review of the record, we conclude that the Tax Court's finding that the compensation paid to the Rutters was in part unreasonable is not clearly erroneous.

There is no doubt that James Rutter was eminently qualified for his position at Rutter Rex. The Commissioner conceded as much. The same can be said of Eugene. There is no doubt that the nature, extent, and scope of James and Eugene Rutter's work was so comprehensive and substantial that it allowed Rutter Rex to function with significantly fewer management personnel than comparable companies. The court made extensive findings regarding this factor but also noted that there was no evidence indicating that the nature, extent, and scope of the Rutters' work increased significantly during the years 1976–1979, compared to the preceding years, to justify the large increases in compensation in 1976–1979. *See B.B. Rider Corp.*, 725 F.2d at 953.

The court did acknowledge that James and Eugene made all the important decisions for Rutter Rex and also were heavily involved in the daily management of the company. By the late 1970's, the company consisted of a number of factories, warehouses, and distribution facilities centered in the New Orleans area. The company had customers spread throughout the country. The court duly noted these facts. Finally, there is no doubt that the Rutters' skillful management kept Rutter Rex afloat during the late 1970's despite the economically precarious nature of the clothing manufacturing business during that period. The success of Rutter Rex during these years is largely attributable to the efforts of James and Eugene Rutter; they should be compensated handsomely for their services. "Nonetheless, limits to reasonable compensation exist even for the most valuable employees." *Owensby & Kritikos*, 819 F.2d at 1325.

The ratio of the combined compensation paid to James and Eugene Rutter to Rutter Rex's net income (before taxes and the deductions for their compensation) was almost 50% in 1976, 40% in 1977, and 30% in 1978. These numbers are significant in light of the rather large net income Rutter Rex made during these years and point toward a finding of excessive compensation. *See Owensby & Kritikos*, 819 F.2d at 1325–26. In addition, in 1979, the Rutters' combined compensation decreased by only $11,250 even though the company suffered a net loss that year. The court noted these facts.

Appellants try to take the sting out of these findings by claiming that one of their experts, Mr. Decker, established that compensation paid to the Rutters as a percentage of *sales* was a more reliable indicator of the reasonableness of the compensation payments than compensation paid as a percentage of gross or net income. Appellants claim the compensation/sales ratios remained at about the same level throughout the late 1970's. It should be noted, however, that Rutter Rex's sales increased

dramatically during this time, thus allowing greatly increased compensation despite the steady compensation/sales ratio. The Tax Court dismissed appellants' expert's compensation to sales ratios as not being helpful to determine reasonable compensation. We see no error in this finding.

Rutter Rex has made dividend distributions to its shareholders only three times in its history: $24,136 in 1966, $4,850 in 1967, and $400,000 in 1972. Appellants claim that at trial they presented evidence that established valid reasons for Rutter Rex's no-dividend policy during 1976–1979. For example, James Rutter testified that the $400,000 dividend payment in 1972 led to some financial problems for the company in 1974, and as a result, he had decided the company would proceed more carefully before paying dividends in the future. James Rutter also testified that his policy was against having the company borrow money. He preferred to keep large amounts of capital in the corporation to offset threatened losses of government contracts, to find and finance replacement contracts, to finance employee training courses, to finance new equipment purchases, and the like. Appellants' argument, however, misses the point. During the years at issue when Rutter Rex was not paying James Rutter any dividends, it was still paying him and Eugene huge bonuses. We do not accept appellants' attempt to explain the failure to pay dividends in the face of the payment of these bonuses to Rutter Rex's essentially sole shareholder and his son.

Appellants point to evidence showing that the compensation of Rutter Rex's top five middle management nonfamily/nonshareholder employees increased by the same percentages as James and Eugene Rutter's compensation during 1976–1979 (a total increase of approximately 94%). The Tax Court, however, noted that James Rutter still received 1.9 to 2.4 times the *aggregate* compensation of these five employees and Eugene Rutter received 1.4 to 1.7 times the *aggregate* compensation of these

five employees. We are ever mindful of the perils of over-reliance on particular statistics.

Appellants claim that James and Eugene had been underpaid during the company's early years and that in part the 1976–1979 compensation payments were to make up for this underpayment. While we agree that prior underpayment can be a factor in determining reasonable compensation, our review of the record does not find support for appellants' claims. We note, for example, that James Rutter made $21,550 in 1936, a year in which this country was still immersed in the Great Depression. His compensation has steadily increased since that time.

The courts have acknowledged that the seventh *Mayson* factor, prevailing rates of compensation for comparable positions in comparable concerns, can be the most significant factor in determining reasonable compensation. *See Owensby & Kritikos*, 819 F.2d at 1330; *Charles Schneider & Co.*, 500 F.2d at 154; *Griffin & Company v. United States*, 389 F.2d 802, 811 (Ct.Cl. 1968).[8] The parties each had two expert witnesses submit reports and give testimony regarding this factor, and the Tax Court focused substantially upon it. Appellants claim, however, that the Tax Court's findings of fact regarding this factor were clearly erroneous because the court misinterpreted and mischaracterized the reports and trial testimony of three of the reasonable compensation witnesses: Simpson, Decker, and Gruenfeld.

The Tax Court relied heavily on the testimony of one of appellants' experts, Mr. Simpson, in determining the reasonable compensation for the Rutters. At trial, Mr. Simpson testified as to the reasonable limit of compensation for the Rutters using the "Hay System." The court accepted these determinations, but did not accept Mr. Simpson's assertion that these figures could be justifiably increased by 100% for bonuses and 100% for "long-term incen-

---

**8.** *See also* Treas.Reg. 1.162–7(b)(3): "In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is, in general, just to assume

that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances."

tives" or Simpson's ultimate conclusion that the entire compensation amounts paid to the Rutters during 1976–1979 were reasonable. We find no error in this conclusion by the court. In *Owensby & Kritikos*, 819 F.2d at 1331, we said: "Even when the Tax Court accepts the general methodology of a highly qualified expert witness, the court may reject the expert's ultimate conclusion if the record does not support that conclusion."

The Tax Court concluded that Simpson had talked only in general terms of incentives, gave no specific data with respect to the extent that these incentives were already included in his "reasonable limit" of compensation, and produced no support for the claim that other companies used in his study generally had such long-term incentives. Our review of the record convinces us that the Tax Court acted without error in not accepting Simpson's conclusions regarding incentives.[9] Furthermore, the court did increase Simpson's maximum reasonable compensation figures by 25% to account for Rutter Rex's lack of a profit-sharing/pension plan based on Simpson's testimony that such plans can amount to 25% of pay in many corporations.

Appellants assert that the court overlooked Simpson's discussion of James Rutter's unreimbursed expenses. Appellants claim that Simpson indicated in his report that Rutter's compensation was effectively decreased by 10% during 1976–1979 by his decision not to be reimbursed for business travel and entertainment expenses incurred on behalf of Rutter Rex. Appellants claim that part of Rutter's compensation during these years is justified under these circumstances to cover these unreimbursed expenses. The Tax Court, however, concluded that there was nothing in the record from which the court could determine what business travel expenses Rutter had paid but did not collect from Rutter Rex. The court also concluded that since it had been

his choice not to be reimbursed, there was no reason to adjust his compensation by an arbitrary 10% to accommodate these items. We see no error in the Tax Court's conclusions.

Appellants assert that the Tax Court was in error in giving too little weight to the report and testimony of their other expert, Mr. Decker. Decker computed executive salaries as a percentage of gross sales and compared Rutter Rex's percentages with those of similar companies. Based on these comparisons, Decker concluded that the compensation paid to the Rutters during 1976–1979 was reasonable. The court said it gave little weight to Decker's testimony because it believed "[h]is comparisons were primarily of salaries to sales which he, himself, testified had no direct relationship." Appellants contend that the Tax Court had previously concluded in another case in which Mr. Decker testified as an expert that comparisons of salaries to sales were highly relevant to the determination of reasonable compensation, *Paramount Clothing Co., Inc. v. Commissioner*, 38 T.C.M. (CCH) 261 (1979). *Paramount Clothing* does not lead to this conclusion. In that case the Tax Court was merely reciting the substance of Decker's testimony and drew no particular conclusion as to the relevance of sales to compensation. In the case at bar, Mr. Decker himself stated that the relationship of sales to compensation bore no direct relationship. Appellants' attempts to explain away this statement by Decker are unconvincing. We discern no error in the Tax Court's unwillingness to accept as persuasive the testimony of Mr. Decker given these uncertainties.

Finally, appellants claim that the Tax Court's partial reliance on the report and testimony of one of the Commissioner's experts, Mr. Gruenfeld, was improper and clearly erroneous. The Tax Court, however, merely stated that it found some of

---

9. We also note that some courts have concluded that a bonus arrangement that might be reasonable if carried out with an executive who is not a controlling shareholder may be viewed as unreasonable if made with a controlling shareholder since incentives to the shareholder/exec-

utive to call forth his best effort presumably would not be needed. *Pepsi–Cola Bottling Co. of Salina, Inc. v. Commissioner*, 528 F.2d 176, 182 (10th Cir.1975); *Charles Schneider & Co.*, 500 F.2d at 153. *Cf. Owensby & Kritikos*, 819 F.2d at 1328.

the data complied by Mr. Gruenfeld to have relevance in its "overall determination of a reasonable salary for each of the Rutters." We find no error in the Tax Court's consideration of this data in its determination of reasonable compensation for the Rutters.

We conclude that the Tax Court's findings regarding reasonable compensation are not clearly erroneous. The court carefully evaluated and weighed the reports and testimony of the various expert witnesses concerning compensation for comparable positions in comparable companies. The court had the discretion to accept or reject, in whole or in part, the opinions of these various experts based upon the court's independent evaluation of the record. The court also properly considered and weighed the other appropriate factors in its determinations of reasonable compensation for James and Eugene Rutter. The deficiencies assessed by the Tax Court are supported by the record.

AFFIRMED.