IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 95-60381
(Summary Calendar)

DONALD PALMER COMPANY, INCORPORATED

Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE

Respondent - Appellee.

Appeal from the United States Tax Court
(24901-92)

April 1, 1996

Before WIENER, PARKER and DENNIS Circuit Judges.

PER CURIAM:[*]

In this federal income tax case, Petitioner-Appellant David

---

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Palmer Company, Inc. (Petitioner) appeals a decision by the United States Tax Court that a portion of the compensation paid to its president and sole shareholder was unreasonable and thus nondeductible as an expense of the corporation. Finding no error, we affirm.

I

FACTS AND PROCEEDINGS

Petitioner is a Louisiana corporation engaged in the business of buying and selling bags and packaging materials. Incorporated in 1979 by David Palmer with a capital contribution of $5,000, Petitioner has consistently grossed several million dollars a year in sales. PalmerSQwho has worked in the plastic packaging business for most of his lifeSQis Petitioner's sole stockholder, as well as its president and only officer. Palmer is also the one responsible for Petitioner's success: He works approximately seventy hours per week, takes little time off, personally generates almost all of Petitioner's sales, and manages its daily operations.

In addition to Palmer, Petitioner employs a secretary, a bookkeeper, and a cleaning person. Petitioner also employed a salesperson in 1985 and again in 1987. In each of those years, however, the individual employed accounted for only an insignificant portion of the total sales and both were discharged after a short period of employment.

For the tax year ended June 30, 1990 (1990), Petitioner paid Palmer compensation of $1,259,979, consisting of $441,446 in salary

2

and a bonus of $818,533.  This appeal concerns the determination, for tax purposes, of the maximum amount of compensation that is reasonable for Palmer's services in 1990.

The following schedule reflects Petitioner's gross receipts, gross profit, officer's compensation (Palmer's compensation), and taxable income for most of its history.

| Tax Year Ended | Gross Receipts | Gross Profit | Palmer's Compensation | Taxable Income |
|---|---|---|---|---|
| 6/30/82 | $2,469,535 | $639,742 | $150,000 | $197,207 |
| 6/30/83 | 2,602,522 | 707,338 | 300,000 | 99,092 |
| 6/30/84 | 3,112,563 | 693,348 | 300,000 | 46,854 |
| 6/30/85 | 3,532,714 | 801,997 | 300,000 | 87,697 |
| 6/30/86 | 2,948,626 | 666,139 | 275,000 | 76,552 |
| 6/30/87 | 3,182,588 | 725,687 | 435,000 | 121,080 |
| 6/30/88 | 3,395,436 | 708,678 | 350,000 | 150,279 |
| 6/30/89 | 4,068,042 | 801,490 | 390,000 | 262,126 |
| 6/30/90 | 4,017,352 | 1,137,182 | 1,259,979 | (339,417) |
| 6/30/91 | 4,057,664 | 884,969 | 617,113 | 17,384 |

In addition to the compensation listed above, Petitioner also made pension plan contributions for the benefit of Palmer during some of these years.[1]  Petitioner has never paid dividends on its stock.

In 1988, Petitioner and Palmer entered into a Deferred Compensation Agreement (Agreement) which provided that Palmer would receive $16,666 per month for ten years.  These payments were to begin on the later of the date on which Palmer (1) attained the age

---

[1]  These pension plan contributions were made during the tax years ended June 30, 1982 through June 30, 1986 in the following respective amounts:  $23,239; $90,675; $141,750; $114,300; and $106,184.

of sixty-five years or (2) actually retired.  Although no deduction was taken, Petitioner's federal income tax returns reflected the accrual of this liability, as follows:

| Tax Year Ended | Deferred Compensation Expense | Deferred Compensation Liability |
|---|---|---|
| 6/30/88 | $ 208,013 | $ 208,013 |
| 6/30/89 | 208,012 | 416,025 |
| 6/30/90 | 208,012 | 624,038 |
| 6/30/91 | 208,013 | 832,050 |

The Agreement further provided that Petitioner had no duty to set aside funds for this obligation owed to Palmer, and payments have never been made to Palmer pursuant to the Agreement.

Following an examination of Petitioner's 1990 income tax return, the Internal Revenue Service (IRS) disallowed the deduction for the entire $818,533 bonus paid to Palmer, insisting that his salary of $441,446 is reasonable compensation for his 1990 services.  Petitioner sought relief in Tax Court.  After a trial on this issue, the Tax Court found that, in addition to Palmer's salary, $220,723 of the bonusSQan amount equal to one-half of Palmer's salarySQis reasonable compensation and thus deductible.

Petitioner now appeals to us, arguing that the Tax Court erred in its determination of reasonable compensation, as well as in disposing of two evidentiary issues related to this determination.

II

4

ANALYSIS

A. STANDARD OF REVIEW

The determination of what is reasonable compensation is a question of fact that is reviewed under the clearly erroneous standard.[2] A finding is clearly erroneous when "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed."[3]

A trial court's admission of evidence is reviewed for abuse of discretion.[4] Challenges to rulings on expert testimony are reviewed under the manifestly erroneous standard.[5]

B. REASONABLE COMPENSATION

A taxpayer is permitted to deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered."[6] The regulations explain that bonuses paid to employees are deductible "when such payments are made in good faith and as additional compensation for services actually rendered by the employees, provided such payments, when added to the stipulated

---

[2] Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1323 (5th Cir. 1987).

[3] United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L.Ed. 746 (1948).

[4] EEOC v. Manville Sales Corp., 27 F.3d 1089, 1092-93 (5th Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1252, 131 L.Ed.2d 133 (1995).

[5] Edmonds v. Illinois Cent. Gulf R.R., 910 F.2d 1284, 1287 (5th Cir. 1990).

[6] 26 U.S.C. § 162(a)(1).

salaries, do not exceed a reasonable compensation for the services rendered."[7]

The amount of compensation that is reasonable depends on the facts and circumstances of each case.[8] When making this inquiry, a court must consider a number of factors, including:

(1) the employees qualifications;
(2) the nature, extent, and scope of the employee's work;
(3) the size and complexities of the business;
(4) a comparison of salaries paid with gross income and net income;
(5) the prevailing general economic conditions;
(6) comparison of salaries with distributions to stockholders;
(7) the prevailing rates of compensation for comparable positions in comparable concerns;
(8) the salary policy of the taxpayer as to all employees;
(9) in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years.[9]

No single factor is determinative.[10] Rather, the trial court must consider and weigh the totality of the facts and circumstances in a particular case when determining reasonable compensation.[11]

The taxpayer has the burden to show that it is entitled to a larger compensation deduction than that allowed by the IRS.[12]

---

[7] Treas. Reg. § 1.162-9.

[8] Rutter v. Commissioner, 853 F.2d 1267, 1271 (5th Cir. 1988).

[9] Id. at 1271; accord Owensby & Kritikos, Inc., 819 F.2d at 1323.

[10] Owensby & Kritikos, Inc., 819 F.2d at 1323.

[11] Rutter, 853 F.2d at 1271.

[12] Owensby & Kritikos, Inc., 819 F.2d at 1324.

Moreover, in a situation in which shareholders of a closely held corporation set their own level of compensation, the reasonableness of this compensation is subject to close scrutiny.[13]

### 1. Termination of Deferred Compensation Agreement

At trial, Palmer testified that the Agreement had been terminated in 1990 to make the corporation more attractive to potential buyers. Thus, Petitioner contends, much of the bonus paid to Palmer in 1990 was not compensation earned in that year, but rather was payment for deferred compensation earned in 1988 and 1989 but lost when the Agreement was terminated. Accordingly, argues Petitioner, the reasonableness of this compensation must be analyzed with regard to the facts and circumstances of the years in which it was actually earned. As the only testimony regarding the purported termination of the Agreement was Palmer's uncontradicted testimony, Petitioner insists that the Tax Court's finding that the Agreement had not been terminated in 1990 is clearly erroneous because a court may not arbitrarily disregard testimony that is competent, relevant, credible, and uncontradicted.[14]

The only testimony on this issue was Palmer's. Petitioner offered no other evidence documenting the alleged termination of the Agreement in 1990. Moreover, Petitioner concedes that its 1990 federal income tax return did not reflect a termination of the

---

[13]  Id.

[14]  See Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963).

7

Agreement. In fact, Petitioner's subsequent income tax return (1991) showed an increase in the deferred compensation liability. Petitioner's sole effort to explain this incongruence is the contention that the entries on the tax returns were simply made in error. The Tax Court's opinion, however, makes clear that it did not find this explanation persuasive. We therefore conclude that the Tax Court did not arbitrarily disregard Palmer's testimony.

Petitioner also contends that the payment of Palmer's bonus left it financially unable to meet its obligation under the Agreement. Thus, argues Petitioner, this payment supports its position that the Agreement was in fact terminated in 1990. The terms of the Agreement, however, did not require any funds to be set aside for this obligation. Thus, we are unconvinced that the payment of this bonus is probative that the Agreement had been in fact terminated in 1990. We therefore conclude that the Tax Court did not clearly err in finding that the Agreement was not terminated in 1990.

2. Return on Investment of Hypothetical Investor

In its analysis, the Tax Court also noted that an important factor in determining reasonable compensation is whether a hypothetical investor would have been willing to pay Palmer the same amount of compensation that he was paid by Petitioner.[15] The corporation's rate of return on equity is relevant in making this

_____

[15] See Elliots, Inc. v. Commissioner, 716 F.2d 1241, 1245 (9th Cir. 1983).

8

assessment.[16] As the large bonus paid to Palmer resulted in negative retained earnings, a taxable loss, and a negative return on investment for its shareholders for 1990, the Tax Court concluded that an independent investor would not have been pleased with his investment if he had to compensate Palmer so handsomely.

Petitioner challenges the Tax Court's analysis by contending that it had positive "earnings and profits." Petitioner insists that the liability for accrued deferred compensation is in the nature of a reserve for future expenses and thus would not reduce its earnings and profits.[17]

This argument misses the mark. Earnings and profits is a tax concept that generally relates to the determination of whether a distribution from a corporation to its shareholders is properly treated as a dividend or a return of capital.[18] That earnings and profits may have been positive, however, in no way impugns the Tax Court's analysis regarding a hypothetical investor's return on investment.

Petitioner also insists that a hypothetical investor would have paid Palmer compensation equal to what he actually received because otherwise Palmer could have quit. As Petitioner's earnings

---

[16] Id.

[17] See BORIS I. BITTKER & JAMES S. EUSTICE, FEDERAL INCOME TAXATION OF CORPORATIONS AND SHAREHOLDERS ¶ 8.04, at 8-31 (6th ed. 1994).

[18] See 26 U.S.C. §§ 301(c), 316(a); see also Mazzocchi Bus Co. v. Commissioner, 14 F.3d 923, 927 (3rd Cir. 1994).

depend almost exclusively on the services of Palmer and not on invested capital, a decision by Palmer to quit would have rendered the corporation virtually worthless.

Although these facts might support a high level of compensation for Palmer's services, we have made clear that "limits to reasonable compensation exist even for the most valuable employees."[19] We therefore are unconvinced that the Tax Court's analysis regarding a hypothetical investor is clearly erroneous.

3. Application of Factors

Finally, Petitioner argues that the Tax Court failed to consider the following factors: the employee's qualifications; the nature, extent, and scope of the employee's work; the size and complexities of the business; and Petitioner's financial condition. Petitioner maintains that these factorsSQas well as the others, which it concedes were consideredSQfavor its position that all of Palmer's compensation is reasonable. Petitioner therefore maintains that the Tax Court's determination of reasonable compensation for Palmer is clearly erroneous. We disagree.

The Tax Court specifically recognized Palmer's many contributions to Petitioner, including that he worked long hours, generated almost all of the sales, and managed the daily operations. The Tax Court also considered Palmer's compensation in prior years, as well as the relationship of such compensation to

---

[19] Owensby & Kritikos, Inc., 819 F.2d at 1325.

10

Petitioner's sales and gross profit. Although some of the relevant factors might favor Petitioner's position, the fact that the Tax Court did not conclude that the entire bonus was reasonable compensation does not mean that these factors were ignored. To the contrary, these factors appear to have been not only considered, but also accorded substantial weight in determining that a bonus equal to fifty percent of Palmer's salary would be reasonable. Moreover, the amount of compensation determined by the Tax Court to be reasonable is consistent with the historical relationship between Palmer's compensation and Petitioner's performance, reflecting the fact that Petitioner had one of its best years in 1990. Our review of the record convinces us that the Tax Court properly considered all of the relevant factors and that its determination of reasonable compensation for Palmer's services is not clearly erroneous.

C. ADMISSION OF EMPLOYMENT CONTRACTS INTO EVIDENCE

Petitioner also contends that the trial court abused its discretion by admitting into evidence the employment contracts of two former salespersons who were employed by Petitioner for short periods of time. Petitioner explains that these two individuals performed different functions than Palmer and generated only an insignificant amount of the total sales. Petitioner maintains that, as the compensation of these two salespersons has little bearing on the issue of reasonable compensation for Palmer, the admission of this evidence was an abuse of discretion. Again we

11

disagree.

One of the factors to be considered in determining reasonable compensation is "the salary policy of the taxpayer as to all employees."[20]  Moreover, comparison of the compensation paid to shareholder-employees with that paid to nonshareholder-employees is relevant.[21]  Thus, even though the employment contracts with these nonshareholder-salespersons might not be entitled to great weight, they cannot be said to be irrelevant.  We therefore conclude that the Tax Court did not abuse its discretion by admitting these employment contracts into evidence.  We note gratuitously that the Tax Court appears to have accorded little if any significance to these contracts, and Petitioner has failed to show that it was prejudiced by their admission.

D.  EXPERT WITNESS

Petitioner also insists that the Tax Court's decision not to qualify Harold Mollere as an expert witness is manifest error.[22]  Petitioner maintains that Mollere is qualified to be an expert in this case, given his experience as a practicing certified public

---

[20]  Rutter v. Commissioner, 853 F.2d 1267, 1271 (5th Cir. 1988).

[21]  Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1329 (5th Cir. 1987).

[22]  Rule 702 of the Federal Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

accountant for thirty-eight years, during which time he reviewed hundreds of federal income tax returns annually for businesses and corporations, and advised clients on their compensation in connection with their year-end planning. Petitioner goes further, suggesting that the Tax Court disqualified Mollere because the IRS had no expert of its own rather than because of Mollere's qualifications.

We are unpersuaded. During voir dire, Mollere admitted that he had not had any specific training in the field of executive compensation, and that he had never been retained to evaluate a company's executive compensation policy. In addition, the Tax Court noted that Mollere's report was unhelpful as it merely summarized his view of the evidence and did not provide sufficient information to make an intelligent evaluation of his conclusion that all of Palmer's compensation is reasonable. Furthermore, Petitioner has absolutely no support for its speculation that the Tax Court's ruling was based on the fact that the IRS had no expert witness of its own. Under these circumstances, we conclude that the Tax Court did not commit manifest error by deciding not to qualify Mollere as an expert.

III

CONCLUSION

Based on the foregoing reasons, the judgment of the Tax Court is AFFIRMED.

13