

# NUMBER 13-06-112-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MICHAEL GIBNEY, INDIVIDUALLY
AND ON BEHALF OF MICRO BLEND, INC.,                     Appellants,

v.

ROY CULVER, JR., CULVER INTERESTS,
AND ANA-TECH, INC.,                                      Appellees.

**On appeal from the 36th District Court of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

This is a two-part suit in which appellant, Michael Gibney, individually and on behalf

of Micro-Blend, Inc. ("Gibney"), brought (1) a shareholder derivative suit for fraud and

breach of fiduciary duty against appellees, Roy Culver, Jr., Micro-Blend, Inc., Culver Interests, and Ana-Tech, Inc and (2) an individualized claim for shareholder oppression against Roy himself. Gibney secured a judgment of $250,000 from the trial court, for shareholder oppression, against Roy, but the trial court, through a directed verdict, dismissed Gibney's derivative claims. By four issues, Gibney contends that (1) the trial court erred in concluding that his derivative claims against Culver Interests were barred by the applicable statute of limitations, (2) the trial court erred in concluding that his derivative claims against Ana-Tech, Inc. were barred by the applicable statute of limitations,[1] (3) the trial court's directed verdict on his derivative claims was premature and improper in that it was not supported by the evidence in the record, and (4) the trial court erred in failing to award prejudgment interest to Gibney. By three issues, taken out of order, on cross-appeal, Roy asserts that (1) the evidence in the record is factually insufficient to support the jury's findings of excessive compensation, (2) no "shareholder oppression" occurred as a matter of law, and (3) the trial court's judgment awarding individual damages to Gibney was erroneous as a matter of law. We affirm in part and reverse and render in part.

## I. Factual Background

### a. Micro-Blend, Inc. and Culver Interests

Micro-Blend, Inc. ("Micro-Blend") is a close corporation originally formed in 1989.[2]

---

[1] Gibney erroneously concludes that the trial court dismissed his derivative claims against Ana-Tech, Inc. ("Ana-Tech") based on statute of limitations grounds. The record reflects that the trial judge dismissed his claims against Ana-Tech based on his failure to provide evidence of damages.

[2] Article 5.14(L) of the Texas Business Corporations Act provides that a "closely held corporation" is a corporation with less than thirty-five shareholders and that has no shares listed on a national securities exchange or regularly quoted in an over-the-counter market by members of a national securities association. TEX. BUS. CORP. ACT ANN. art. 5.14(L)(2) (Vernon 2003).

Micro-Blend manufactured patented blending systems for soft drinks. The idea for Micro-Blend originated with Gibney and was financed by Roy. There were originally four shareholders of Micro-Blend at its inception—Roy, his brother Doug Culver, Gibney, and Michael Lucas—and later grew to a maximum of thirty-four shareholders.

Micro-Blend's corporate governance structure provided for a five-person board of directors (the "Board") to be elected at their annual shareholders' meetings. Roy served on the Board from the formation of Micro-Blend in 1989 until 1991. Doug served on the Board from 1989 until 1993. Roy, however, served as the chief executive officer of Micro-Blend since its inception. Gibney, the third largest shareholder in Micro-Blend, was a member of the Board from 1989 until 1994.[3] Gibney asserts that he resigned from the Board with the title of Vice-President of Micro-Blend.[4]

In 1991 and 1992, Micro-Blend's systems were assembled on "skids" in Ingleside, Texas, which were then delivered to the customer and installed, rather than assembled on site at the customer's plant. Micro-Blend began contracting with Kemp Industries to build the systems on skids.[5] However, Kemp Industries had problems with quality-control and timeliness, so an alternate plan was needed.

At a meeting on August 29, 1994, the Board passed Gibney's motion to have Roy

---

[3] Gibney asserts that he was involved in the technical aspects of the company and that he spent most of his time on the road "visiting and servicing the blending systems." Gibney also notes that he "knew little or nothing about the day to day operations of the business" and that Roy isolated him by "refusing to furnish or disclose information to him about the finances of Micro-Blend, Inc. despite various demands."

[4] Roy does not dispute Gibney's service as Vice-President of Micro-Blend. However, Roy simply notes that "[h]e [Gibney] was a Vice President of the company for several years . . . ." On appeal, Roy contends that Gibney voluntarily resigned his position on the board of directors "after becoming dissatisfied with Culver's [Roy's] management and decisions by the Board of Directors" and that Gibney "never again put himself into consideration for membership on the Board."

[5] The record reflects that Kemp Industries produced ten to twelve systems for Micro-Blend during the relevant time frame.

actively pursue other companies to manufacture the skids. At a Board meeting on January 13, 1995, the Board authorized a contract with Culver Interests to manufacture the skids.[6] Culver Interests continued to manufacture the systems until Culver Interests Number 3 dissolved in 1997.[7] At that time, Culver Interests gave its assets—the equipment and materials used in the production of the skids—to Micro-Blend and Micro-Blend commenced production of the skids on its own.[8]

**b. Ana-Tech, Inc.**

Ana-Tech, Inc. ("Ana-Tech") was formed by Roy in the 1980s to supply trained technicians skilled in calibrating and repairing gauges and metering devices for refineries and chemical plants on a temporary basis. Roy and Doug each owned 50% of the stock of Ana-Tech even though Roy ran the company himself. Valero Refinery, Dupont, Oxy, and CPPC were among Ana-Tech's past customers. Essentially, Ana-Tech was an

---

[6] Appellees assert that the contract price between Culver Interests and Micro-Blend was "cost plus up to a 12% markup—the same that had been charged by Kemp Industries." On the other hand, Gibney makes the following contentions:

> Appellee-Culver [Roy] also, owned two (2) companies, viz, Culver Interests and Ana-Tech, Inc. Culver Interests was originally formed in 93-94 by appellee-Culver, and owned jointly with his wife. The joint ownership ended upon divorce and resulted in sole ownership by appellee-Culver in 1994. Later, in 96-97, appellee-Culver, formed another Culver interests with two (2) shareholders of Micro-Blend, Inc., namely Michael Lucas and J.K. Ramsey. This Culver Interest "Number 3" was only in existence for two (2) years (1996-1997), its sole customer was Micro-Blend, Inc., and was supposed to be manufacturing skids for Micro-Blend, Inc. However, this Culver interest "Number 2" with no equipment, with an address on the secretary, Terri Doyel's Desk, took $2.75 million dollars from Micro-Blend, Inc., under the disguise that it was building skids for Micro-Blend, Inc.

(Record citations omitted).

[7] In his brief on cross-appeal, Roy notes that "Culver Interests was the assumed name of three separate Culver-related entities." The first entity was a sole proprietorship. The second entity was a partnership between Roy and his ex-wife that ended upon their divorce. The third entity was a partnership between Roy and two other Micro-Blend shareholders. It is the third entity which dissolved and distributed its assets to Micro-Blend in 1997.

[8] Roy asserts that the equipment given to Micro-Blend by Culver Interests "was worth $75,000-$80,000 . . . ."

"instrumentation labor pool contractor." In addition, Ana-Tech provided workers compensation insurance on its employees, including the technicians it supplied to customers and its clerical and administrative staff.

### c. The Relationship Between Ana-Tech and Micro-Blend

From the inception of Micro-Blend, Ana-Tech supplied all employees to the company. In fact, Roy contends that "Gibney himself was paid by Ana-Tech in 1990 for work performed for Micro-Blend . . . ." Ana-Tech continued to supply the labor force for Micro-Blend's operations until 2001. At this time, Micro-Blend's Board decided to pay its own employees rather than transact through Ana-Tech. Gibney contends that "Ana-Tech, Inc., was supposed to be doing Micro-Blend Inc. [sic] payroll, however, the secretary of Micro-Blend Inc., Terri Doyel[,] did all the so called payroll services" and that "[a]ppellee-Culver [Roy] took $4.93 million dollars from Micro-Blend, Inc. through Ana-Tech, Inc. under the disguise that it was providing payroll services." Conversely, Roy argued that the principal reason that Micro-Blend used Ana-Tech to provide its labor force was "Ana-Tech's favorable workers' compensation experience rating." Roy further argues that Ana-Tech's handling of Micro-Blend's labor force saved Micro-Blend $28,000 a year in workers' compensation insurance premiums.[9]

### II. PROCEDURAL BACKGROUND

Gibney filed his shareholder derivative and shareholder oppression actions against

---

[9] Appellees note that the $28,000 a year savings that Ana-Tech afforded Micro-Blend represented a savings of $140,000 over five years, the minimum amount of time it would take for Micro-Blend's experience rating to match Ana-Tech's. Roy further notes that Micro-Blend would not have been able to procure the $45,000 to $50,000 liability premiums that Ana-Tech procured because of Micro-Blend's start-up company status. In addition, Roy contends that voluminous payroll records were introduced at trial which established that "persons working for Micro-Blend's benefit—who were formally Ana-Tech employees—were also paid by Micro-Blend" and that the contracts between Ana-Tech and Micro-Blend were legitimate business arrangements that constituted a reasonable business decision by Micro-Blend's board of directors.

5

Roy, Culver Interests, and Micro-Blend on November 27, 2000. Gibney joined Ana-Tech on April 15, 2003.[10] The case was first tried to verdict in 2004, with the jury concluding that Gibney and the other minority shareholders were entitled to $12,000,000 in actual and exemplary damages and $4,000,000 in attorney's fees. However, in response to appellees' motion to disregard the jury's findings and for a judgment non obstante verdicto, the trial judge ordered a new trial on June 16, 2004.[11]

The case was re-tried to a jury on the causes of action contained in Gibney's seventh amended petition, which was filed on June 23, 2005.[12] On July 6, 2005, appellees filed their third amended answer and asserted a counterclaim against Gibney, claiming Gibney's derivative claims "were not preceded by reasonable inquiry, were and are

---

[10] The record reflects that Gibney joined Ana-Tech in his shareholder derivative action on April 15, 2003, in his second of seven amended petitions. In his fourth amended petition, the relevant petition for the first trial on the merits, Gibney sought $40,000,000 in relief, including attorney's fees and exemplary damages, for claims of breach of the duty of care by Roy, the usurpation of corporate opportunities, self-dealing by Roy to defraud Micro-Blend, gross negligence, mismanagement and misappropriation of corporate assets, breach of the duty of loyalty to Micro-Blend and its shareholders by Roy, and that Culver Interests and Ana-Tech were "sham organizations" used and created by Roy to usurp Micro-Blend's business opportunities and to siphon income from Micro-Blend.

[11] The retrial and the resulting judgment is the subject of Gibney's appeal and appellees' cross-appeal.

[12] In his seventh amended petition, Gibney asserted that (1) Roy used Ana-Tech to siphon over $4.93 million from Micro-Blend from 1994-2000 under the disguise of "payroll services," (2) Roy, through Culver Interests, received over $2.75 million from Micro-Blend for skids that were actually manufactured by Micro-Blend, (3) Roy breached the duty of care in the management of Micro-Blend and breached the duty of loyalty to Micro-Blend and its shareholders, (4) Roy failed and refused to allow Gibney and other shareholders an opportunity to inspect the books and financial records of Micro-Blend despite various requests, (5) Roy mismanaged and misrepresented the affairs of Micro-Blend by failing to disclose the financial status and account for all of Micro-Blend's income and expenses, (6) Roy misappropriated both the corporate assets and opportunities of Micro-Blend, (7) Roy engaged in oppressive conduct towards minority shareholders, which involved the suppression of dividends, changing the corporation form from an "S" corporation to a "C" corporation, and the siphoning off of corporate earnings through excessive compensation to himself and his family, (8) Roy engaged in offensive and outrageous conduct towards Gibney which caused Gibney to suffer mental anguish, emotional distress, and to live in constant fear of his life, (9) Roy's actions were intentional and grossly negligent with respect to the rights of appellant, (10) Roy formed Culver Interests, along with J.K. Ramsey and "Lawrence Lucas," to defraud Micro-Blend of at least $2.75 million, and (11) Roy engaged, authorized, or ratified the "consistent destruction of documents by and through Terri Doyel . . . to hide and secrete his unlawful acts." Gibney continued to allege that he and the other minority shareholders suffered damages in the maximum sum of $40,000,000.

groundless and brought in bad faith; or groundless and brought for the purpose of harassment; or groundless and interposed for an improper purpose" to cause unnecessary delay or needless increase in the cost of litigation. In this filing, appellees also asserted a myriad of affirmative defenses, including a statute of limitations defense.

After Gibney rested his case-in-chief, the trial judge granted appellees' motion for a partial directed verdict on Gibney's fraud claims contained in paragraph thirteen of his seventh amended petition on statute of limitations grounds.[13] Once appellees rested their case-in-chief, the trial judge directed a verdict on Gibney's remaining shareholder derivative claims, stating that Gibney had not produced any evidence as to damages. The case went to the jury based solely on Gibney's shareholder oppression cause of action. The trial court submitted five questions to the jury regarding Gibney's shareholder oppression cause of action. Those questions, and the jury's answers thereto, were as follows:

Question No. 1.

Do you find from a preponderance of the evidence that Roy Culver, Jr., since November 27, 1998, maliciously or wrongfully refused to allow Michael Gibney to examine the books and records of Micro-Blend, Inc.?

Answer: Yes or No: **NO**

Question No. 2.

---

[13] Paragraph thirteen of Gibney's seventh amended petition provides:

13. Micro-Blend,Inc. was in the business of building skids. On or about 1994, Roy Culver, Jr., formed Culver [I]nterests and misrepresented that it was building skids for Micro-Blend, Inc. However, the skids were being built by Micro-Blend, Inc. From 1994 through 1997, Roy Culver, Jr., through Culver Interests, received over $2.75 million from Micro-Blend, Inc. for skids that were actually built by Micro-Blend, Inc. Plaintiffs will further show that Culver Interests is a sham organization, and that Roy Culver, Jr. used his position as the Chief Executive Officer and Majority Shareholder to perpetuate such a fraud on Micro-Blend, Inc.

Do you find from a preponderance of the evidence that Roy Culver, Jr., since November 27, 1998, maliciously or wrongfully used his position as the Chief Executive Officer of Micro-Blend, Inc., to award excessive salaries and compensation to himself to the detriment of Michael Gibney?

Answer: Yes or No:     **YES**

Question No. 3.

Do you find from a preponderance of the evidence that Roy Culver, Jr., since November 27, 1998, maliciously or wrongfully used his position as the Chief Executive Officer of Micro-Blend, Inc., to award excessive salaries and compensation to members of his family to the detriment of Michael Gibney?

Answer: Yes or No:     **YES**

Question No. 4.

Do you find from a preponderance of the evidence that Roy Culver, Jr., used his position as the Chief Executive Officer of Micro-Blend, Inc., to maliciously or wrongfully direct the withholding of payment of dividends from Micro-Blend, Inc., to Michael Gibney in 1998, 1999, and 2000?

Answer: Yes or No:     **NO**

If you have answered any one of the preceding questions "YES," answer the next question. If you have answered each of the preceding questions "NO," do not answer the next question.

Question No. 5.

What is the value of Michael Gibney's shares in Micro-Blend, Inc.?

Answer in dollars and cents, if any.

Answer:                    **$4,000,000**

As evidenced above, the jury returned a verdict that was partially favorable to Gibney. On August 4, 2005, Roy filed a motion to set aside the jury's findings to the second and third questions contained in the jury charge. Furthermore, on August 29, 2005, Roy, Ana-Tech, and Culver Interests filed a motion for judgment with the trial court

8

asserting that Gibney was entitled to a take nothing judgment as a matter of law on all of his claims. On December 9, 2005, the trial court denied Roy's motion to set aside the jury's findings.

In its judgment signed on February 2, 2006, the trial court held that the jury's findings constituted a finding that Roy had oppressed Gibney, a shareholder in Micro-Blend. Subsequently, the trial court awarded Gibney $250,000 in damages against Roy.[14]

On March 6, 2006, Gibney filed a notice of appeal, and Roy filed a motion for new trial. The trial court did not rule on Roy's motion for new trial, and it was subsequently overruled by operation of law. *See* TEX. R. APP. P. 33.1(b); *see also* TEX. R. CIV. P. 329b(c). Roy then filed notice of his cross-appeal on May 1, 2006.[15]

### III. STANDARD OF REVIEW

A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). The evidence is no more than a scintilla and, in legal effect, is no evidence "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence." *Kindred v. Con/Chem.,*

---

[14] The trial court's February 2, 2006 judgment awarded Gibney post-judgment interest at the rate of 7% per annum and costs of court. The trial court also concluded that appellees should take nothing from their counterclaim. Moreover, the trial court explicitly denied Gibney prejudgment interest in this order.

[15] Roy notes on appeal that "[b]ecause of the order in which the notices of appeal were docketed, Gibney is appellant and Roy and the entity defendants are appellees. This later cross-appeal properly reflects only Roy as the cross-appellant and Gibney as cross-appellee."

*Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

## IV. ANALYSIS

### A. Gibney's Derivative Claims

#### 1. Gibney's Fraud Claims Against Roy and Culver Interests

In his first issue on appeal, Gibney asserts that the trial court's directed verdict as to his claims against Culver Interests and Roy was improper because the legal doctrines of fraudulent concealment, continuing tort, and the discovery rule save his causes of action from appellees' affirmative defense of statute of limitations. In support of his contention, Gibney noted that the evidence at trial proved that Roy, through Culver Interests, fraudulently took $2.75 million from Micro-Blend in 1996 and 1997, and that his cause of action for fraud was timely filed. In addition, Gibney notes that (1) he did not discover the existence of a previously unknown "Culver Interests 'number 2'" until after the lawsuit was filed, (2) the evidence demonstrated that appellees engaged in fraudulent concealment, which would counter appellees' affirmative defense of statute of limitations, and (3) appellees failed to put on evidence to support their statute of limitations claim.

Appellees countered by arguing that (1) Gibney failed to raise a fact issue that Culver Interests was a sham organization, (2) Gibney failed to establish the essential

10

elements of his causes of action for fraud and breach of fiduciary duty, and (3) the facts adduced at trial established that Gibney's fraud cause of action accrued more than four years before Gibney filed suit.

### a. Applicable Law

A cause of action for injury to the property of a corporation or for impairment or destruction of its business is vested in the corporation, as distinguished from its shareholders. *Redmon v. Griffith*, 202 S.W.3d 225, 236 (Tex. App.–Tyler 2006, pet. denied) (citing *Davis v. Sheerin*, 754 S.W.2d 375, 381 (Tex. App.–Houston [1st Dist.] 1988, writ denied)); *see Murphy v. Campbell*, 964 S.W.2d 265, 268 (Tex. 1997); *Hajdik v. Wingate*, 753 S.W.2d 199, 201 (Tex. App.–Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d 717 (Tex. 1990). To recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer. *Redmon*, 202 S.W.3d at 236-37 (citing *Faour v. Faour*, 789 S.W.2d 620, 621-22 (Tex. App.–Texarkana 1990, writ denied)).

Statute of limitations is an affirmative defense. TEX. R. CIV. P. 94. A defendant bears the initial burden to plead, prove, and secure findings to sustain its plea of limitations. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *see also Twist v. Garcia*, No. 13-05-00321-CV, 2007 Tex. App. LEXIS 7187, at *8 (Tex. App.–Corpus Christi Aug. 30. 2007, no pet.) (mem. op.). Fraud claims have a four year statute of limitations period from the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE. ANN. § 16.004(a)(4) (Vernon 2002). Generally, the accrual date of a cause of action is a question of law. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.

11

1990) (the question of when a cause of action accrues is a judicial one unless defined by the legislature). The accrual date is when the plaintiff knew or should have known of the wrongfully caused injury. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999); *see also Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999).

**b. Discussion**

On appeal, Gibney contends that appellees failed to present evidence to the trial court in support of their statute of limitations defense. Appellees direct this Court to three exhibits introduced into evidence that serve as adequate support for their statute of limitations defense as to Culver Interests.

The first exhibit referenced by appellees, marked Defendant's Exhibit 45, is an inter-office memorandum from Roy to Gibney and Mike Lucas dated May 25, 1990. In the memorandum, Roy references personal expense accounts for three employees, including $5,103.94 paid to Gibney, and salaries payable to a group of employees, including $7,437.36 payable to Gibney for 250.5 hours worked. Appellees' second exhibit, marked Defendant's Exhibit 72, is a memorialization of the Micro-Blend Board meeting on August 29, 1994. The following language, in this document, makes clear that Gibney participated in the Board meeting: "All members were present except Troy Kemp. . . . 4. Motion by Gibney and Collins, seconded, that CEO provide financial support, limited manufacturing, and standard drawings to advance faster delivery of equipment." Finally, appellees' third exhibit, marked Defendant's Exhibit 74, is a memorialization of the Micro-Blend Board meeting on January 13, 1995. In this document, Micro-Blend's Board agreed to contract with Culver Interests for the construction and manufacture of five skids, three for pending

systems sold and two for anticipated sales, at a cost of 12% over actual cost. The record reflects that these documents were contained within the business records of Micro-Blend.

Gibney contends that Micro-Blend entered into a contract with Culver Interests to manufacture skids and that Micro-Blend employees actually manufactured the skids while Culver Interests pocketed the money made from the manufacturing work. As such, Gibney contends that Roy, specifically, perpetuated a fraud on Micro-Blend with this arrangement. Based on the evidence adduced at trial, the date of the Board's decision to enter into the manufacturing contract with Culver Interests—January 13, 1995—governs our statute of limitations analysis because it is the date in which the alleged fraud began; the day when the interests of Micro-Blend's Board members allegedly began to run counter to the interests of Gibney and the other minority shareholders of Micro-Blend.

The statute of limitations period for fraud is four years from the accrual date. TEX. CIV. PRAC. & REM. CODE. ANN. § 16.004(a)(4). The record reflects that Gibney filed his original petition alleging fraud, among other claims, on November 27, 2000. The record further reflects that appellees, in their second amended answer filed on February 10, 2005, pleaded that Gibney's causes of action for fraud were barred by the statute of limitations. Therefore, based on the evidence presented at trial, Gibney needed to have filed his original petition by January 13, 1999, in order to comply with the applicable statutes of limitation. Because Gibney did not file his original petition by January 13, 1999, it is clear to this Court that Gibney's fraud claims against Roy and Culver Interests were barred by statute of limitations.

Gibney, however, argues that the statute of limitations on his fraud cause of action against Roy and Culver Interests was "deferred," i.e., tolled by the legal doctrines of

13

fraudulent concealment, continuing tort, and the discovery rule. In support of his contention, Gibney references the following language in his seventh amended petition: "All Plaintiff's claims are continuing and ongoing and Plaintiffs asserts [sic] fraudulent concealment and discovery rule to any Defendant's claim of limitations."[16] On appeal, Gibney simply states that his causes of action for fraud and breach of fiduciary duty "were clearly timely filed" and that the trial testimony of Doyel regarding appellees' document destruction policies establish his claim for fraudulent concealment. Gibney has not provided this Court with a clear and concise argument linking the evidence adduced at trial to his contention that the statutes of limitation are tolled in accordance with the discovery rule or the continuing tort doctrine. *See* TEX. R. APP. P. 38.1(h). We therefore conclude that Gibney has inadequately briefed these theories; thus, these theories are waived. *See id.*

Gibney has, however, provided argument and authority as to his fraudulent concealment contention. In support of his contention that an accrual date can be deferred by fraudulent concealment, Gibney cites to the Texas Supreme Court's holding in *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996). Gibney has also provided this Court with citations to the trial testimony of Doyel chronicling the document retention policies of Micro-Blend.

In *S.V.*, the supreme court noted that the accrual of a cause of action is deferred in two types of cases: (1) in those involving allegation of fraud or fraudulent concealment, accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run; and (2) in those cases in

---

[16] Gibney also directed this Court to Plaintiff's Exhibit 32, which is a voluminous exhibit that contains the bylaws of Micro-Blend and numerous copies of Roy's bank statements from the First National Bank of Ingleside. The bank statements are organized chronologically from August 1996 to March 2002, but Gibney failed to explain what this Court is to glean from this compilation of paperwork. *See* TEX. R. APP. P. 38.1(h).

which the discovery rule applies, "the nature of the injury occurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *S.V.*, 933 S.W.2d at 6.

"The fraudulent concealment doctrine, unlike the discovery rule, resembles equitable estoppel." *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.–Fort Worth 1997, pet. denied) (fraudulent concealment is based on the doctrine of equitable estoppel; the doctrine tolls or suspends the running of limitations after it has begun because the defendant has concealed facts necessary for the plaintiff to know that he had a cause of action). Moreover, the plaintiff asserting fraudulent concealment must have reasonably relied on the defendant's lies or improper silence; once a plaintiff knows or should have known of the deceit, reliance is no longer reasonable, and the toll effect ends. *Id.* In essence, Gibney is required to show: (1) the existence of the underlying "tort"; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Id.*; *see also Cass v. Stephens*, 156 S.W.3d 38, 64 (Tex. App.–El Paso 2004, pet. denied) (holding that fraudulent concealment applies to any cause of action).

Doyel's testimony reflects that she became the secretary and custodian of records for Micro-Blend in 1995, the custodian of records for Ana-Tech in 2001, and the custodian of records for Culver Interests in 2002. Doyel also noted the following:

Q: Is there a way where you kept like a time log about how many hours that you spent working for Micro-Blend, Ana-Tech, Culver Interests and Roy Culver?

A: I kept a time sheet but I never worked for Roy Culver—of hours that I worked on things for the different companies during the day.

15

. . . .

Q: Okay. Now, the time sheet that we are talking about, are they still in existence or have they been destroyed?

A: We have a retention policy—

THE COURT: Just answer the question.

. . . .

Q: Are all those time sheets available?

A: No, sir; they're not.

Q: Who destroyed them?

A: I believe I did in the course of business.

. . . .

Q: How many of those [source documents] have you destroyed?

A: Just invoicing. Time sheets were destroyed as time went on. I have old detail trial balances, accounts receivable, accounts payable records, payroll journals.

Q: How about backup records [to your accounting and recording procedures]? Did you destroy those too?

A: As years went on.

. . . .

Q: Can you tell us whether you are able to determine, for example, the number of hours that a typical employee has worked over a period of time without a source document?

A: Not right now, no, sir.

. . . .

Q: Did Roy Culver know about your destruction of documents?

A: We've never discussed it, but, yes, I'm sure he saw me shredding documents.

16

. . . .

Q: And the destruction of documents we're talking about started in 1989? Did it start in 1989?

A: For Ana-Tech Company, yes, sir.

Q: And for Micro-Blend Incorporated, when did destruction of the documents start?

A: It's a general course of business, so it would be done every year once a year for previous years back.

. . . .

Q: What year did you start destroying documents for Micro-Blend Incorporated?

A: I don't believe anything was destroyed until probably 1995 or '96.

Despite Doyel's testimony about Micro-Blend's document retention policies, Gibney has not established the required elements for fraudulent concealment, as intimated in *Mitchell Energy Corp.* and *Cass*. *See Mitchell Energy Corp.*, 958 S.W.2d at 439; *see also Cass*, 156 S.W.3d at 64. Gibney has failed to identify the nature of the documents that were allegedly destroyed, how the alleged destruction of said documents prejudiced his causes of action, and that appellees destroyed said documents in an effort to conceal them from Gibney. Furthermore, Doyel's testimony establishes that Micro-Blend destroyed such files on a specified date within the ordinary course of business. Considering his service on the Board and as a Vice-President of Micro-Blend, Gibney should have known of Micro-Blend's document retention policy.[17] Given that Gibney acknowledged that "there was

---

[17] Gibney testified at trial that when he left Micro-Blend, at sometime in 1995, he knew "there was something wrong" because "[o]ur sales had skyrocketed and when I left, I knew we should be getting a dividend. I mean, big dividends." In regard to Gibney's personal knowledge of what was wrong, Gibney testified that he had suspicions that something was wrong and that Mike Lucas had told him something, but that it didn't make sense to him. Gibney further noted "[i]t shocked me to think that I am making $50,000 and

17

something wrong" when he left Micro-Blend in 1995, this Court is not persuaded by Gibney's contention that because of his alleged attenuated involvement with Micro-Blend's day-to-day activities, he was surprised to find out about these practices.

In addition, the record reflects that Gibney submitted to the trial court an instruction on spoliation of evidence to be included in the jury charge, which the trial court refused to submit to the jury. "[W]hen a party improperly destroys evidence, trial courts may submit a spoliation presumption instruction." *See Trevino v. Ortega*, 969 S.W.2d 950, 960 n.4 (Tex. 1998) (Baker, J., concurring) (noting that the decision to issue this instruction is a legal determination that occurs *after* the trial court concludes "that there was a duty to preserve evidence, the spoliating party breached that duty, and the destruction prejudiced the nonspoliating party") (citing *Watson v. Brazos Elec. Power Coop., Inc.*, 918 S.W.2d 639, 643 (Tex. App.–Waco 1996, pet. denied)) (emphasis added). In declining to include a spoliation presumption instruction, the trial court implicitly concluded that Gibney had not established the necessary prerequisites outlined in *Trevino*. *See id.* Gibney himself testified that he was able to review bank statements, tax returns, checks, and other relevant Micro-Blend documents at various points in time, which undermines his fraudulent concealment contention. We therefore conclude that Gibney has failed to establish that appellees destroyed evidence to conceal information from Gibney that ultimately prejudiced his case. Because Gibney has failed to establish his fraudulent concealment, continuing tort, or discovery rule contentions and because he did not file his original petition within the four-year statute of limitations period, the trial court did not err in concluding that Gibney's fraud claims against Roy and Culver Interests were time barred. Accordingly, we overrule

there's a secretary making [$]80,000 or 70 or whatever, 75 or 78."

18

Gibney's first issue.

**2. Remaining Derivative Claims Against Roy and Ana-Tech**

In his second issue on appeal, Gibney argues that the statute of limitations should not have barred his claim that Roy "fraudulently took" $4.93 million dollars from Micro-Blend and gave it to Ana-Tech "under the disguise of payroll services." Gibney does admit that "[t]he only potential limitations issue is for the period 1994 through April 15, 1999." However, Gibney also argues that appellees did not put on any evidence of their limitations defense and that his claims are deferred by the discovery rule, fraudulent concealment, and the continuous tort doctrines. Once again, appellees countered by arguing that (1) Gibney failed to raise a fact issue that Ana-Tech was a sham organization, (2) Gibney failed to establish the essential elements of his causes of action for fraud and breach of fiduciary duty, specifically damages, and (3) the facts adduced at trial established that Gibney's fraud and breach of fiduciary duty causes of action accrued more than four years before Gibney filed suit.

However, Gibney has mischaracterized the trial court's directed verdicts. The record reflects that the trial court directed a verdict as to Gibney's remaining derivative claim of breach of fiduciary duty against Roy and Ana-Tech on no-evidence grounds with respect to damages.[18] Because Gibney has failed to properly address the trial court's directed verdict with respect to the remaining derivative claims against Roy and Ana-Tech, we conclude that Gibney has inadequately briefed this issue. *See* TEX. R. APP. P. 38.1(h). In

---

[18] The record reflects that appellees moved for an instructed verdict on limitations grounds as to paragraphs thirteen and fourteen [claims against Ana-Tech] of Gibney's seventh amended petition. However, the trial court specifically noted that: "Therefore, I'm going to find that under paragraph 13 of your petition, this contract of Micro-Blend is barred by the statute of limitations." The trial court did not find that paragraph fourteen of Gibney's seventh amended petition was barred by the statute of limitations.

any event, we will analyze these claims within the context of a legal sufficiency review.

### a. Applicable Law

To establish common law fraud, a plaintiff must prove: "(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the trust and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). On the other hand, the elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. *See Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.–Texarkana 2004, no pet.); *see also Los Cucos Mexican Cafe, Inc. v. Sanchez*, No. 13-05-578-CV, 2007 Tex. App. LEXIS 3408, at *16 (Tex. App.–Corpus Christi May 3, 2007, no pet.) (mem. op.).

### b. Discussion

The trial court directed a verdict in favor of appellees as to Gibney's remaining causes of action against Roy and Ana-Tech, stating that Gibney failed to prove damages. With respect to damages, the following exchange occurred:

THE COURT: . . . . [Y]ou still haven't told me what would be the measure of damages for Micro-Blend, because even if that were so, then for the work to have been done, it had to have been paid for. There had to be a loss to someone. Micro-Blend would have had to be paying something for it. From the onset in this case, you've said all the damages, every penny paid to Ana-Tech are

20

damages in this case. Somebody was getting some skids. Somebody was selling a profit. There was a cost involved in selling that product. Now, with all the money coming in, there's X amount of dollars. And a product is being delivered. Somehow there had to be a cost to it, and you just seem to write that out completely in your theory on this case. And I can't do that.

[Counsel for Gibney]: Judge, that's a disputed issue of fact for the jury to decide.

THE COURT: To be a disputed issue of fact, there has to be evidence which reasonable minds could not differ, Counsel, and there's no evidence to support that figure, okay, in this particular case. All right. All right.

. . . .

THE COURT . . . . I'm going to grant your request [motion for directed verdict]. I don't think there's any evidence regarding the damages.

At trial, Gibney repeatedly argued that Ana-Tech was a sham organization that did not perform any services for the benefit of Micro-Blend; rather, Gibney asserted that it was Micro-Blend who was actually performing the services. Throughout trial, Gibney claimed that all money received by Ana-Tech from Micro-Blend was damages and that the measurement and calculation of the damages was a fact issue for the jury to decide. Appellees countered by presenting evidence that Ana-Tech's "payroll services" conferred a benefit to Micro-Blend and that Ana-Tech was not a sham organization. Furthermore, appellees noted that although the correct measure of damages was benefit of the bargain, Gibney failed to plead any theory for the measurement of damages.

Gibney offered the expert testimony of Wendy Kurz, a certified public accountant, to establish that Micro-Blend made $4.93 million in payments to Ana-Tech for payroll

21

services. Kurz testified that she was able to make this determination by matching up amounts that were in Mirco-Blend's expenditures to amounts recorded in Ana-Tech's tax returns. However, Gibney failed to provide any evidence that Ana-Tech did not confer a benefit to Micro-Blend in exchange for the $4.93 million in payments made. Gibney only presented his own self-serving testimony that he believed that Ana-Tech was a sham organization and that Ana-Tech had not conferred any benefit to Micro-Blend.

In fact, Gibney has maintained throughout trial and on appeal that he was not personally involved in the day-to-day operations of Micro-Blend, which undermines his alleged personal knowledge of the relationship between Micro-Blend and Ana-Tech. Otherwise, Gibney failed to present additional evidence as to the appropriate measure for damages, that Ana-Tech was a sham organization, and that Micro-Blend sustained any damages. Because of this, Gibney failed to establish the damages element for either of his derivative causes of action. *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 524 (noting that to establish common law fraud, a plaintiff must prove, among other things, that: "(6) the party suffered injury."); *see also Punts*, 137 S.W.3d at 891 (stating that among the elements for a breach of fiduciary duty claim is a requirement that the defendant's breach results in an injury to the plaintiff). Therefore, we conclude that the trial court did not err in granting appellees' motion for directed verdict as to Gibney's remaining derivative claims against Roy and Ana-Tech. Accordingly, we overrule Gibney's second issue.

### 3. The Trial Court's Directed Verdict on Gibney's Derivative Claims

In his third issue on appeal, Gibney asserts that the trial court's directed verdict on his derivative claims is not supported by the record. Specifically, Gibney notes that tax returns, bank statements, checks, and other documents admitted into evidence establish

that Roy, personally and through his other companies, siphoned money from Micro-Blend. Gibney also contends that Roy's companies provided no services for Micro-Blend even though Micro-Blend paid Roy's companies for various services and that Micro-Blend's tax returns do not reflect various other sources of income. In addition, Gibney argues that the trial court's directed verdicts on his derivative claims of fraud and breach of fiduciary duty were "clearly premature and improper and requires [sic] reversal." Conversely, appellees contend that Gibney's most recent live pleading, his seventh amended petition, is defective in that Gibney failed to plead any measure of damages to support a judgment. Appellees also argue that the trial court's directed verdicts were not "premature" because the trial court is authorized to direct a verdict in favor of a defendant once the plaintiff rests his case-in-chief and the evidence adduced at that point conclusively proves facts that establish the right of the movant, or negates the right of the nonmovant, to judgment.

### a. Applicable Law

A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or (2) when the evidence is insufficient to raise a material fact issue. *See Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Ray v. McFarland*, 97 S.W.3d 728, 730 (Tex. App.–Fort Worth 2003, no pet.); *see also Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 90-91 (Tex. App.–Corpus Christi 1992, writ dism'd w.o.j.). In reviewing a directed verdict, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See City of Keller*, 168 S.W.3d at 827.

If the question to be decided is whether the losing party at trial raised a material fact

23

issue, we consider all the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004). In essence, we give the losing party the benefit of all reasonable inferences created by the evidence. *See id.* If we determine that any conflicting evidence of probative value raises a material fact issue on any theory of recovery, then the directed verdict is improper because such an issue is for the jury to resolve. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam).

Moreover, "[a] trial court may not properly direct a verdict, on its own motion, if all of the evidence has not been presented." *Wedgeworth v. Kirskey*, 985 S.W.2d 115, 116 (Tex. App.–San Antonio 1998, pet. denied) (citing *Nassar v. Hughes*, 882 S.W.2d 36, 38 (Tex. App.–Houston [1st Dist.] 1994, writ denied)). It is reversible error if the trial court directs a verdict before the plaintiff has presented all of his evidence. *Id.* (citing *Buckner v. Buckner*, 815 S.W.2d 877, 878 (Tex. App.–Tyler 1991, no writ)).

### b. Discussion

Gibney argues that the trial court's directed verdicts on his derivative claims were premature and improper because the trial court directed the verdicts in favor of appellees based on limitations before appellees had presented their evidence. Gibney, however, has not provided this Court with any authority supporting his contention that the trial court must wait until the defendant has presented its case-in-chief to direct a verdict. *See* Tex. R. App. P. 38.1(h).

In fact, several Texas courts have concluded that the trial court may direct a verdict once the plaintiff has presented its case-in-chief. *See Wedgeworth*, 985 S.W.2d at 116;

24

*Nassar*, 882 S.W.2d at 38; *Buckner*, 815 S.W.2d 877, 878. It is only reversible error if the trial court directed a verdict without allowing the plaintiff to present all of its evidence. *See Wedgeworth*, 985 S.W.2d at 116. The record reflects that the trial court's directed verdicts occurred after Gibney was afforded the opportunity to present all of his evidence to the trial court. Therefore, the trial court's directed verdicts were not premature.[19] Additionally, because we have already determined that Gibney's derivative claims fail, Gibney has failed to present this Court with a material fact issue which would be reserved for a jury to decide. *See Prudential Ins. Co.*, 29 S.W.3d at 77 (holding that a directed verdict is proper if the plaintiff has failed to raise a material fact issue); *Ray*, 97 S.W.3d at 730 (same); *see also Kelly*, 832 S.W.2d at 90-91 (same). Based on the foregoing, we conclude that the trial court's directed verdicts on Gibney's derivative claims were neither premature nor improper. Accordingly, we overrule Gibney's third issue.

## B. Gibney's Individualized Shareholder Oppression Claim

### 1. Factual Sufficiency of the Jury's Findings of Excessive Compensation

By his first issue on cross-appeal, Roy contends that the evidence in the record is factually insufficient to support the jury's findings that Roy paid himself and his family members excessive compensation.[20] On the other hand, Gibney asserts that the record

---

[19] Gibney, in his case-in-chief, presented voluminous payroll records, invoices, checks, receipts, and bills of lading. Included in these voluminous records were copies of what we have previously referred to as Defendant's Exhibits 45, 72, and 74, which, as we have previously concluded, conclusively established that Gibney did not establish a right to judgment on statute of limitations grounds. *See Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 90-91 (Tex. App.–Corpus Christi 1992, writ dism'd w.o.j.).

[20] Specifically, Roy notes that: "(1) Gibney's expression of personal opinion that the salaries and compensation were 'shocking' is incompetent evidence; (2) evidence of the amount of the salaries and compensation alone does not provide evidence of excessiveness; (3) 'excessive compensation' claims require expert testimony to rebut the presumptive reasonableness of the salaries and compensation received; and (4) to the extent profit from transactions between Micro-Blend and other Culver entities could be construed as compensation, the evidence either conclusively established that the transactions occurred before November 27, 1998 or did not show any profit to the other Culver entity." Roy further notes that "[m]ere

is devoid of any evidence that the compensation paid to Roy and his family members was reasonable given that many of Roy's family members "had little or no education, no licenses, no certifications, and/or disabled and qualified for any job, yet were averaging over $70,000.00 per year in compensation, in Ingleside, Texas, with a population of about nine (9) thousand people."[21]

**a. Applicable Law**

In conducting our factual sufficiency review, we are mindful that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony, and we may not substitute our judgment for that of the jury. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

---

minority shareholder dissatisfaction with corporate governance is not enough to support a finding of shareholder oppression. Evidence of conduct prejudicial to the minority shareholder, so harsh and burdensome as to visibly depart from ordinary standards of fair dealing, is required. There is no such evidence in this record."

[21] Gibney makes the following allegations with respect to his excessive compensation claims against Roy's family members:

> (1) Brother—Doug Culver, with little or no education, no license, no certification, *no office*, and was making over $72,000.00, in compensation per year, *plus*, benefits; (2) Disabled Son—Troy Culver, with a [b]rain injury and receiving Social Security Benefits, with little or no education, no license, no certification, and only sweeps and cleans-up the shop was making over $72,000.00, in compensation per year, plus, benefits; (3) Daughter Dawon [sic] Spiegelhoff with little or no education, no license, no certification, and who [sic] job was to answer the telephone, was making over $46,000.00 in compensation per year, plus benefits. (4) Family Member/Friend—Terry Doyel, the secretary with three (3) Hats, with little or no education, no license, no certification . . . was making over $80,000.00 in compensation per year, plus benefits. Cross-appellant, Culver, Jr., has little education, no license, no certification, *and does not know how to build a skid*, was double dipping, by making double compensation from Micro-Blend, Inc., of over $186,000.00 per year, plus, benefits. (Record citations omitted) (emphasis in original).

**b. Discussion**

As previously mentioned, questions two and three of the jury charge asked the following:

Question No. 2.

Do you find from a preponderance of the evidence that Roy Culver, Jr., since November 27, 1998, maliciously or wrongfully used his position as the Chief Executive Officer of Micro-Blend, Inc., to award excessive salaries and compensation to himself to the detriment of Michael Gibney?

Question No. 3.

Do you find from a preponderance of the evidence that Roy Culver, Jr., since November 27, 1998, maliciously or wrongfully used his position as the Chief Executive Officer of Micro-Blend, Inc., to award excessive salaries and compensation to members of his family to the detriment of Michael Gibney?

The jury responded in the affirmative to both questions. However, the evidence in the record does not support the jury's conclusions.[22]

Gibney directs this Court to "Plaintiffs [sic] Exhibits 13 and 15" in support of his contention that Roy and his family members received excessive compensation. These exhibits are simply tax returns for Roy and his family members that demonstrate the following:

Wages, Tips, and Other Compensation

|  | Year Ending 2000 | Year Ending 2001 |
|---|---|---|
| Roy Culver, Jr. | $186,598.36 | $1,093,447.02 |
| Troy Culver | $68,511.42 | $77,558.52 |
| Terry Doyel | $50,408.96 | $68,412.40 |

---

[22] We must, as the reviewing court, clearly state why the jury's finding is factually insufficient when reversing a jury verdict, but we need not do so when affirming a jury's verdict. *See Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006)

| | | |
|---|---|---|
| Dawn Spiegelhoff | $38,613.60 | $45,989.96 |
| Doug Culver | $31,000.00 | $67,140.99 |

Roy included a similar chart with his motion to set aside the jury's findings, which chronicled, in relevant part, the compensation paid to Micro-Blend employees. The chart provided, in relevant part:

| Name | Ana-Tech 2000 | Micro-Blend 2001 |
|---|---|---|
| Roy Culver, Jr. [CEO of Micro-Blend] | $195,652 | $176,424 |
| Mike Lucas [Board member] | 164,332 | 112,543 |
| J.K. Ramsey [Board member] | 107,223 | 105,995 |
| Troy Dean Culver | 72,915 | 80,365 |
| Terri Doyel | 53,488 | 69,674 |
| Dawn Spiegelhoff | 40,440 | 45,989 |
| Doug Culver | $ 31,000 | $ 72,132 |

Gibney asserts that he was paid $50,000 per year as a contract laborer for Micro-Blend at the time he left the company in 1995.[23] Based on the above mentioned salaries, Gibney testified that "it shocked me to think that I'm making $50,000 and there's a secretary making 80,000 or 70 or whatever, 75 or 78." Gibney relies solely on his listing of compensation for each individual, his own testimony that the salaries were "shocking," and his contention that persons within minimal credentials in Ingleside, Texas, should not make such salaries. This evidence is not enough.

---

[23] The record, however, contains an email from Gibney to Helm Pletcher Bowen & Saunders L.L.P. dated November 18, 1997, where Gibney admits that he made $100,000 from Micro-Blend in the year 1996. Roy notes that Micro-Blend distributed almost $420,000 in dividends to Gibney between 1995 and 2004. Gibney testified that he remained a contract employee with Micro-Blend, earning only $1,000 per week, because he "was expecting big paybacks from the dividends." In addition, the record reflects that Gibney voluntarily resigned from the Micro-Blend Board and from his position as a contract employee with Micro-Blend.

The factual scenario in the instant case has not been specifically addressed by Texas courts.  However, the Fifth Circuit, in *Rutter v. Commissioner of Internal Revenue*, has held that the reasonableness of compensation paid by a corporation is a question of fact and that each case turns on its own facts and circumstances.  853 F.2d 1267, 1271 (5th Cir. 1988).  The *Rutter* court intimated the following factors for a reviewing court to consider in the determination of reasonable compensation:

(1) the employee's qualifications;

(2) the nature, extent and scope of the employee's work;

(3) the size and complexities of the business;

(4) a comparison of salaries paid with gross income and net income;

(5) the prevailing general economic conditions;

(6) comparison of salaries with distributions to stockholders;

(7) the prevailing rates of compensation for comparable positions in comparable concerns;

(8) the salary policy of the taxpayer [corporation] as to all employees; and

(9) in the case of small corporations with a limited number of officers[,] the amount of compensation paid to a particular employee in previous years.

*Id.* (citing *Owensby & Kritikos, Inc. v. Comm'r of Internal Revenue*, 819 F.2d 1315, 1323 (5th Cir. 1987); *Mayson Mfg. Co. v. Comm'r of Internal Revenue*, 178 F.2d 115, 119 (6th Cir. 1949)).  The *Rutter* court further emphasized that no single factor is determinative and that the reviewing court should consider and weigh the totality of the facts and circumstances in determining reasonable compensation.  *Id.*  Moreover, "the action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper."  *Mayson Mfg. Co.*, 178 F.2d

29

at 119.[24]

### i. Roy's Compensation

Roy testified that he had graduated from high school, that he did not have any relevant licenses or certifications, and that he could not build a skid. He further testified that he received compensation from Ana-Tech and Micro-Blend; that he believed the compensation received from Micro-Blend was reasonable given that the Board had authorized the payment; and that the compensation received from Ana-Tech was money owed to him from the winding up of Ana-Tech by virtue of his ownership of the company. Roy testified that he agreed to take checks for a couple thousand a week from Ana-Tech, rather than taking a lump sum of $150,000. Roy's testimony reflected that he received payments from both Ana-Tech and Micro-Blend for two or three years. Roy stated that he received bonuses on three to five occasions for his work as the chief executive officer of Micro-Blend, but that the bonuses were always awarded by vote of the Micro-Blend Board.[25] Roy denied ever awarding himself a bonus.

Gibney, however, failed to present evidence upon which the trial court or this Court can compare and measure Roy's compensation. In fact, Gibney relies heavily on the fact that he allegedly made only $50,000 per year at Micro-Blend and that Roy made

---

[24] Article 12.31 of the Texas Business Corporation Act provides that "[a] close corporation shall be managed . . . (1) by a board of directors in the same manner an ordinary corporation is managed by its board of directors under this Act; or (2) in the manner provided for in its articles of incorporation or in a shareholders' agreement." TEX. BUS. CORP. ACT ANN. art. 12.31 (Vernon 2003). The Texas Business Corporation Act also addresses the duties of directors in close corporations. *See id.* art. 13.06 (Vernon 2003). Specifically, "[i]n discharging the duties of director under this Act or otherwise, a director, in considering the best interests of the corporation, may consider the long-term as well as the short-term interests of the corporation and its shareholders, including the possibility that those interests may be best served by the continued independence of the corporation." *Id.*

[25] Roy recalled that on one occasion the Board authorized a bonus of $45,000, but he could not recall when the Board authorized the bonus.

significantly more money than he did even though the idea for the company was his own. Given Roy's status as the chief executive officer of an apparently thriving business, it does not appear unreasonable for Roy to receive $195,652 in compensation during 2000 and $176,424 in compensation during 2001.[26] Furthermore, the evidence demonstrates that Roy's compensation was authorized by the Board. The record does not contain sufficient evidence to overcome the presumption that compensation decisions made by the Board are reasonable and proper. *See Mayson Mfg. Co.*, 178 F.2d at 119. Moreover, Gibney has not presented any evidence as to the remaining elements intimated in *Rutter* in establishing that Roy's compensation was excessive or unreasonable. *See Rutter*, 853 F.2d at 1271.

### ii. Doug Culver's Compensation

At trial, Doug testified that he does [27]not have any licenses or certifications, but that he was trained to learn the systems used by Micro-Blend. With respect to Doug, Gibney introduced Micro-Blend's tax returns to establish Doug's salary for 2000 and 2001: $31,000 and $72,132, respectively. Doug further testified that he contributed $6,000 to $7,000 worth of metering equipment to Micro-Blend and that he received shares of Micro-Blend stock in exchange for his contribution. Doug also noted that he made $9.00 per hour less than other technicians at Micro-Blend because "Roy wanted to make sure that he wasn't accused of padding the payroll with a kin folk." No additional evidence was

---

[26] As previously noted, Roy's tax returns indicate that he received $186,598.36 in wages, tips, and other compensation during 2000 and $1,093,447.02 in 2001. The record does not contain information as to the extra income Roy received in 2001. However, it is clear from the record that Roy has created and run several successful businesses and it is plausible that the additional income is derived from another such business.

[27] Doug's tax returns reflect that he received $31,000 in wages, tips, and other compensation during 2000 and $67,140.99 in 2001.

presented as to the remaining elements established in *Rutter*, especially evidence regarding prevailing rates of compensation for comparable positions in comparable companies. *See id.* In fact, we have nothing to compare Doug's compensation to other than Gibney's bald assertion that the compensation provided was "shocking." Gibney has not presented any evidence as to the remaining elements intimated in *Rutter* in establishing that Doug's compensation was excessive or unreasonable. *See id.*

### iii. Terri Doyel's Compensation

Doyel testified that she graduated from high school, but that she does not have any special licenses or certifications to manage the bookkeeping for Micro-Blend. On appeal, Gibney directs us to Micro-Blend's tax returns showing Doyel's salaries during 2000 and 2001: $53,488 and $69,674, respectively.[28] Clearly, within the context of *Rutter*, evidence of an employee's salary and their qualifications alone are not dispositive. *See id.* Therefore, based on our review of the record, Gibney did not establish that Doyel's compensation was excessive or unreasonable.

### iv. Dawn Spiegelhoff's Compensation

At trial, Gibney failed to establish Spiegelhoff's education level or qualifications. Gibney merely asserts on appeal that Spiegelhoff had "little or no education, no license, no certification, and who [sic] job was to answer the telephone . . . ." Again, Gibney directs us to Micro-Blend's tax returns for the years 2000 and 2001 to establish Speigelhoff's salary: $40,440 and $45,989, respectively.[29] The evidence indicates that Spiegelhoff was

---

[28] Doyel's tax returns reflect that she received $50,408.96 in wages, tips, and other compensation in 2000 and $68,412.40 in 2001.

[29] Speigelhoff's tax returns reflect that she received $38,613.60 in wages, tips, and other compensation in 2000 and $45,989.96 in 2001.

responsible for answering the telephone and filing at Micro-Blend. Here, Gibney relied solely on the amount of compensation to establish that Speigelhoff received excessive or unreasonable compensation. However, the *Rutter* court established that one element alone is not dispositive and that a reviewing court must consider the facts and circumstances in totality. *See id.* Therefore, based on our review of the record, Speigelhoff's compensation was neither excessive nor unreasonable.

### v. Troy Culver's Compensation

With respect to Troy Culver's compensation, Gibney testified that Troy worked for Micro-Blend during a portion of Gibney's tenure at Micro-Blend from 1992 to 1995. Gibney testified that Troy "swept the shop and cleaned up." Gibney further testified that Troy sustained a "brain damage-type injury" from a motorcycle accident, but that he remained a Micro-Blend employee even after the injury. As previously mentioned, Troy received $72,915 in compensation during the year 2000 and $80,365 in compensation for the year 2001.[30] Again, Gibney relies heavily on the amount of compensation alone to establish excessive or unreasonable compensation. As was the case earlier, this evidence alone is not enough. *See id.* The evidence demonstrates that Troy, despite his impairment, was responsible for assembling systems, which included complicated wiring components. On appeal, Roy noted that Troy's compensation increased because he was paid overtime, which was commensurate with Troy's increased responsibility at Micro-Blend. Thus, Gibney has not established that the Board was unreasonable in authorizing Troy Culver's salaries in 2000 and 2001.

---

[30] Troy's tax returns indicate that he received $68,511.42 in wages, tips, and other compensation in 2000 and $77,558.52 in 2001.

In sum, Gibney has failed to present sufficient evidence to overcome the presumption that the compensation decisions of the Micro-Blend Board with respect to Roy, Doug, Troy, Doyel, and Spiegelhoff were reasonable and proper. *See Mayson Mfg. Co.*, 178 F.2d at 119. Gibney continually argues that the compensation afforded these individuals was excessive in "Ingleside, Texas, with a population of about nine (9) thousand people." However, Gibney has not provided this Court with sufficient evidence showing either the average compensation scheme in Ingleside, Texas, or compensation schemes for comparable positions with comparable companies. Gibney relies solely on the amount of compensation provided and his own self-serving testimony that the compensation provided was "shocking" to establish that the compensation provided to Roy and his family members was excessive or unreasonable.

It is clear to this Court that there is a complete absence of vital fact that the compensation paid to Roy and his family members was excessive or unreasonable; therefore, there is insufficient evidence to support the jury's finding that Roy maliciously or wrongfully used his position as chief executive officer of Micro-Blend to award excessive salaries to himself and his family members "to the detriment of Michael Gibney." *See Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 334 (holding that a legal sufficiency challenge may be sustained when the record discloses a complete absence of evidence of a vital fact). Based on the foregoing, we conclude that the jury's answers as to questions two and three of the jury charge are against the overwhelming weight of the evidence. *See Cain*, 709 S.W.2d at 176. Accordingly, we sustain Roy's first issue on cross-appeal.

## 2. The Trial Court's Finding of Shareholder Oppression[31]

By his second issue on cross-appeal, Roy argues that because the evidence is factually insufficient as to the jury's findings of excessive compensation, the trial court abused its discretion in concluding that Gibney was oppressed as a minority shareholder. Roy further contends that no shareholder oppression occurred as a matter of law. Gibney asserts that the trial court's finding of shareholder oppression is supported by two separate and independent jury answers which provided that Roy maliciously and wrongfully used his position as the chief executive officer of Micro-Blend to award excessive salaries and compensation to himself and to members of his family.[32] Finally, Gibney argues that the siphoning off of the profits of a "close" corporation as excessive salaries or bonus payments for the sole benefit of the majority shareholders and to the detriment of the minority shareholders would constitute oppressive conduct.[33]

---

[31] We address this issue in full because "a claim of oppressive conduct can be independently supported by evidence of a variety of conduct." *Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App.–Tyler 2006, pet. denied) (citing *Davis*, 754 S.W.2d at 381). "Because any one of a variety of activities or conduct can give rise to shareholder oppression, the fact that there may be a lack of evidence to support the existence of one such activity does not defeat the claim so long as there is evidence to support that another such instance of conduct occurred." *Id.* at 234 n.3.

[32] We have already determined that the jury questions pertaining to excessive compensation upon which Gibney relies were not supported by the evidence; however, in light of the *Redmon* case, we will examine the entire record for other potential instances of oppressive conduct on the part of Roy towards Gibney. *See Redmon*, 202 S.W.3d at 234 & n.3.

[33] In support of this contention, Gibney cites several cases from different jurisdictions. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452 (Tex. 1996); *Davis v. Sheerin*, 754 S.W.2d 375, 381 (Tex. App.–Houston [1st Dist.] 1988, writ denied); *Balvik v. Sylvester*, 311 N.W.2d 383, 389 (N.D. 1987); *Baker v. Commercial Body Builders, Inc.*, 507 P.2d 387, 393-94 (Or. 1973) ("Or the plundering of a "close" corporation by the siphoning off of profits by excessive salaries or bonus payments and the operation of the business for the sole benefit of the majority of the stockholders, to the detriment of the minority stockholders, would constitute such "oppressive" conduct as to authorize a dissolution of the corporation under the terms of ORS 57.595 [OR. REV. STAT. ANN. § 57.595 (West 2005)]."); *Browning v. C & C Plywood Corp.*, 434 P.2d 339, 340-43 (Or. 1967).

35

### a. Applicable Law

Whether certain acts were performed is a question of fact, but the determination of whether such acts constitute shareholder oppression is usually a question of law for the court. *Willis v. Bydalek*, 997 S.W.2d 798, 801 (Tex. App.–Houston [1st Dist.] 1999, pet. denied); *Davis*, 754 S.W.2d at 380-81. We review the trial court's legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *see Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 121 (Tex. App.–Corpus Christi 1999, pet. denied) ("Legal conclusions of the trial court are always reviewable and the appellate court is not obligated to give any particular deference to those conclusions."). Specifically, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *Marchand*, 83 S.W.3d at 794. If the reviewing court determines that a conclusion of law is erroneous, but the trial court rendered a proper judgment, then the erroneous conclusion of law will not require reversal. *Id.*

In *Davis*, the court of appeals defined "oppressive conduct" as follows:

1. majority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

754 S.W.2d at 381-82; *see also Willis*, 997 S.W.2d at 801. Courts must exercise caution in determining what shows oppressive conduct. *Willis*, 997 S.W.2d at 801. A minority shareholder's reasonable expectations must be balanced with the corporation's need to exercise its business judgment and run its business efficiently. *Id.* Therefore, a

36

corporation's officers and directors are afforded rather broad latitude in conducting corporate affairs despite the existence of a minority-majority fiduciary duty. *Id.*

However, "[c]ourts take an especially broad view of the application of oppressive conduct to a closely-held corporation, where oppression may more easily be found." *Redmon*, 202 S.W.3d at 234 (quoting *Davis*, 754 S.W.2d at 381). Additionally, majority shareholders are sometimes said to stand in a fiduciary relationship with both the corporation that they control and with minority shareholders. *See DeBord v. Circle Y of Yoakum, Inc.*, 951 S.W.2d 127, 133 (Tex. App.–Corpus Christi 1997), *rev'd on other grounds*, *Stary v. DeBord*, 967 S.W.2d 352 (Tex. 1998).

**b. Discussion**

In the instant case, Gibney relies heavily on the second prong of the shareholder oppression analysis as set forth in *Davis*. Gibney only presented evidence as to the first prong—the defeat of the minority shareholder's reasonable expectations by the majority shareholder—within the context of dividend payments. In its answer to question four of the jury charge, the jury concluded that Roy did not maliciously or wrongfully withhold dividend payments to Gibney from 1998 to 2000. As previously noted, Gibney testified that he remained a contract employee with Micro-Blend, earning $1,000 per week, because he "was expecting big paybacks from the dividends." The record reflects that Gibney chose to not become a salaried employee of Micro-Blend. The record further reflects that Gibney received almost $420,000 in stock-related payments from Micro-Blend from 1995 to 2004. In fact, the record includes checks from Micro-Blend to Gibney for the following dates and amounts:

| Date | Amount | Reason Described on the Check |
|---|---|---|
| April 12, 1995 | $13,475.00 | Partial Distribution |
| January 10, 1996 | $97,070.61 | 48% of Profits for Year Ending 12-31-1996 |
| April 18, 2001 | $57,419.32 | Dividend of $3.2379924 per share on 17,733 shares |
| April 24, 2002 | $57,419.32 | Dividend of $3.2379924 per share on 17,733 shares |
| January 1, 2003 | $57,419.32 | Dividend of $3.2379924 per share on 17,733 shares |
| February 25, 2003 | $57,419.32 | Dividend of $3.2379924 per share on 17,733 shares |
| February 26, 2003 | $44,332.50 | Dividend of $2.50 per share |
| February 14, 2004 | $36,466.00 | $2.00 per share dividend on 17,733 shares |

The record also contains checks from Micro-Blend to other Micro-Blend shareholders dating from 1995 to 2004. Like Gibney, no other Micro-Blend shareholder received cash distributions from Micro-Blend during the 1998 to 2000 time period referenced in the jury charge. Clearly, Gibney was neither singled out nor oppressed, as to dividend distributions at any time. In addition, Micro-Blend's Board was not obligated to issue yearly dividends to Micro-Blend shareholders, according to article VI of Micro-Blend's bylaws.[34]  *See* TEX. BUS. CORP. ACT ANN. art. 2.38-1 (Vernon 2003) (noting that

[34] Article VI of the Micro-Blend bylaws provides the following:

1. Declaration

The board of directors may declare at any annual, regular or special meeting of the board and the corporation may pay, dividends on the outstanding shares in cash, property or in share of the corporation to the extent permitted by, and subject to the provisions of, the laws of the State of Texas.

the board of directors may, not shall, authorize and the corporation may, not shall, pay share dividends to shareholders subject to any restrictions in the corporation's articles of incorporation or any restrictions set forth in the Texas Business Corporation Act). Therefore, based on our review of the record, the jury's verdict as to question four of the jury charge is supported by the evidence in the record. In addition, the record reflects that Gibney's expectations as the minority shareholder were not defeated by the majority shareholders. *See Davis*, 754 S.W.2d at 381-82.

With respect to the second prong of the shareholder analysis set forth in *Davis*, Gibney alleged throughout the trial and on appeal that Roy maliciously or wrongfully denied him access to the books and records of Micro-Blend. *See id.* If true, this action would most certainly be construed as "burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely." *Id.* Article 2.44 of the Texas Business Corporation Act provides the following:

> Any person who shall have been a shareholder for at least six (6) months immediately preceding his demand, or shall be the holder of at least five per cent (5%) of all outstanding shares of a corporation, *upon written demand stating the purpose thereof*, shall have the right to examine, in person or by agent, accountant, or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes, and

---

2. Reserves

Before payment of any dividend there may be set aside out of any funds of the corporation availabe [sic] for dividends such sum or sums as the directors from time to time in their absolute discretion think proper as a reserve fund to meet contingencies or for equalizing dividends or for repairing or maintaining any property of the corporation or for such other purpose as the directors shall think conducive to the interest of the corporation, and the directors may abolish any such reserve in the manner in which it was created.

share transfer records, and to make extracts therefrom.

TEX. BUS. CORP. ACT ANN. art. 2.44(c) (Vernon Supp. 2007) (emphasis added). Article 2.44 further provides that if a corporation refuses to allow such a shareholder access to its books and records, the corporation shall be liable to the shareholder for all costs and expenses, including attorney's fees, incurred in defending his rights under that Article. *Id.* art. 2.44(D). In addition, the corporation would be liable for any other remedies afforded by law. *Id.*

After hearing all the evidence, the jury concluded, in response to question one of the jury charge, that Roy did not maliciously or wrongfully prevent Gibney from inspecting Micro-Blend's books and records. The evidence in the record supports the jury's finding. Roy testified that only on two or three occasions did Gibney contact him and that Gibney did not send any letters to Micro-Blend requesting to examine Micro-Blend's books and records. Roy further noted that as far as he knew Doyel, his secretary, did not receive any letters from Gibney concerning Micro-Blend's books and records; Doyel corroborated Roy's testimony as to the lack of written requests for inspection from Gibney. And, although Gibney asserted throughout trial and on appeal that he made numerous requests orally and in writing to inspect Micro-Blend's books and records, the record does not contain documentation from Gibney reflecting a desire and stating a proper purpose for the inspection in compliance with article 2.44 of the Texas Business Corporation Act. *See id.* art. 2.44(c). Therefore, the jury's verdict as to question one of the jury charge is supported by the evidence in the record. Based on the foregoing, Gibney has not established that Roy engaged in burdensome or wrongful conduct that would constitute a claim for shareholder oppression. *See Davis*, 754 S.W.2d at 381-82. Because Gibney has not

40

established either of the two prongs in *Davis*, we conclude that the trial court abused its discretion in concluding that Gibney had successfully established a claim for shareholder oppression against Roy and in awarding Gibney $250,000 in damages.  Accordingly, we sustain Roy's second issue on cross-appeal.

Because we have concluded that Gibney has not established a claim for shareholder oppression against Roy, we need not address Roy's third issue on cross-appeal pertaining to the propriety of awarding individual damages to Gibney.  *See* Tex. R. App. P. 47.1.

### 3. Pre-Judgment Interest

Finally, in his third issue on appeal, Gibney argues that the trial court erred in denying him pre-judgment interest because the trial court concluded that he was entitled to relief for shareholder oppression, and because he properly pleaded for pre-judgment interest.  Because we have concluded that Gibney is not entitled to a judgment on either his derivative claims or his shareholder oppression claims and because Gibney's claims were purely economic in nature, we conclude that the trial court did not abuse its discretion in denying Gibney prejudgment interest.  *See* Tex. Fin. Code Ann. §§ 304.101, 304.104 (Vernon 2006); *Johnson & Higgins of Tex.*, 962 S.W.2d at 530 (prejudgment interest does not apply to claims involving purely economic loss); *see also Lege v. Jones*, 919 S.W.2d 870, 875-76 (Tex. App.–Houston [14th Dist.] 1996, no writ) (holding that the award of prejudgment interest is discretionary with the trial court).  Accordingly, we overrule Gibney's third issue.

### V. Conclusion

Based on the foregoing, we affirm the judgment of the trial court as to Gibney's

derivative claims and we reverse and render a take-nothing judgment as to Gibney's

shareholder oppression claims in favor of Roy Culver, Jr.


_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 10th day of April, 2008.

_____

42